Elsie SUMMERS, Appellant,

v.

WALLACE HOSPITAL, Paul L. Ellis, Hubert E. Bonebrake, and Lewis B. Hunter, a copartnership, and Hubert E. Bonebrake, M. D., individually, Appellees.

No. 16400.

United States Court of Appeals
Ninth Circuit.

March 17, 1960.

George C. Doub, Asst. Atty. Gen., Samuel D. Slade, Leavenworth Colby, Attys., Dept. of Justice, Washington, D. C., Lynn J. Gillard, U. S. Atty., San Francisco, Cal., Keith R. Ferguson, Sp. Asst. to Atty. Gen., Graydon S. Staring, Atty., Dept. of Justice, San Francisco, Cal., for appellant.

C. W. Kenady, Jr., Joseph G. Schumb, Jr., San Francisco, Cal., for appellee.

Before ORR, HAMLEY and MERRILL, Circuit Judges.

Doepker & Hennessey, M. J. Doepker, M. F. Hennessey, Butte, Mont., James W. Ingalls, Coeur d'Alene, Idaho, for appellant.

Hawkins & Miller, E. L. Miller, Coeur d'Alene, Idaho, for appellees.

Before HAMLEY, JERTBERG, and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

In this Idaho malpractice case brought in federal court because of diversity of citizenship, judgment of dismissal was entered on a directed verdict for defendants. The verdict was so directed on the ground that the action was barred by the statute of limitations. Elsie Summers, the plaintiff, appeals.

The facts are simple and not in dispute. In March 1951 Dr. Hubert E. Bonebrake, one of the appellees, utilizing the facilities of appellee hospital, performed upon appellant a surgical operation known as a total hysterectomy. In so doing a curved surgical needle was negligently left within appellant's abdomen. Between that date and November 1954 appellant returned to Dr. Bonebrake on numerous occasions complaining of severe pain, soreness, and agony in the area of the operation. She submitted herself to the doctor at the hospital for examination, but he failed to discover the presence of the needle.

Appellant did not call upon Dr. Bonebrake again until February 1956. In the meantime she consulted Dr. R. W. Cordwell on August 5, 1955, at which time the existence of the foreign substance in the body of appellant was discovered. On February 11, 1956, she consulted a Dr. MacPherson, who advised that the needle be removed, and directed her to Dr. Bonebrake to have this done. Dr. Bonebrake performed an operation and removed the needle on February 23, 1956.

Appellant does not assert that there was any negligence with regard to the latter operation. She does allege that appellees were negligent in leaving the needle in her body at the time of the

**833**

March 1951 operation. She also alleges that appellees were negligent thereafter in failing to discover the needle in her abdomen. The action was commenced by the filing of the complaint on July 29, 1957.

■ This being a diversity action, the statute of limitations to be applied is that of the State of Idaho, as construed by the courts of that state.[1] Sections 5–201 and 5–219, paragraph 4, of the Idaho Code provide that an action to recover damages for an injury to the person can only be commenced within two years after the cause of action shall have accrued. The supreme court of Idaho has held that this statute is applicable to actions for malpractice. Trimming v. Howard, 52 Idaho 412, 16 P.2d 661.

The trial court held that appellant's cause of action, in so far as it was based upon failure to remove the needle at the time of the original operation, accrued at the time that operation was performed. It further held that in so far as the cause of action was based upon negligence in thereafter failing to discover and remove the needle, it accrued at the time Mrs. Summers had her last consultation with Dr. Bonebrake prior to going to another doctor. Since the complaint was not filed until more than two years after either of these events a verdict for appellees was directed.

■■ Appellant contends that as a matter of law post-operative treatment must be regarded as continuing until the needle was removed, tolling the running

of the statute of limitations for that period regardless of when treatment actually ceased. Under this theory the Idaho statute of limitations would not bar the action, since the complaint was filed within two years after the needle was removed.

This theory was not advanced or dealt with in Trimming v. Howard, supra. Nor do we find any other Idaho decision which is helpful in determining how the courts of that state would view this contention. It is therefore necessary to look elsewhere. As stated in West v. American Telephone & Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139, it is our duty to ascertain from all available data what the state law is and apply it rather than to prescribe a different rule, however superior such rule may appear from the viewpoint of "general law." Whatever sources and processes the courts of Idaho would examine or employ in deciding this question in the first instance ought to be examined and employed by us here.[2]

Appellant has cited nine cases decided in other jurisdictions in support of her contention that treatment continues until the foreign substance has been removed.[3] In none of these decisions, except possibly the Huysman case, is it suggested that regardless of actual termination, treatment would be assumed to continue until the foreign substance or other difficulty is found. In all, the date on which actual treatment ceased, unless the difficulty was sooner discovered, marked the time when tolling of the statute of

1. Rules of Decision Act, 28 U.S.C.A. § 1652. Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079.

2. See Arthur L. Corbin, "The Laws of the Several States," 50 Yale Law Journal 762, 771 (1940–41); Charles E. Clark, "State Law in the Federal Courts: The Brooding Omnipresence of Erie v. Tompkins," 55 Yale Law Journal, 267, 291 (1945–46).

3. Hahn v. Claybrook, 130 Md. 179, 100 A. 83, L.R.A.1917C, 1169; De Haan v. Win-

ter, 258 Mich. 293, 241 N.W. 923; Hotelling v. Walther, 169 Or. 559, 130 P. 2d 944, 144 A.L.R. 205; Peteler v. Robison, 81 Utah 535, 17 P.2d 244; Silvertooth v. Shallenberger, 49 Ga.App. 133, 174 S.E. 365; Schmit v. Esser, 183 Minn. 354, 236 N.W. 622, 74 A.L.R. 1312; Williams v. Elias, 140 Neb. 656, 1 N.W. 2d 121; Bowers v. Santee, 99 Ohio St. 361, 124 N.E. 238; and Huysman v. Kirsch, 6 Cal.2d 302, 57 P.2d 908.

limitations ended or when such statute began to run.[4]

The cases collected in the exhaustive annotations on this general subject, to be found in American Law Reports, indicate without exception that the continuing treatment which may postpone the running of the statute must be actual treatment.[5] We have no reason to believe that the courts of Idaho would adopt a different view. We therefore hold that to the extent that post-operative treatment may have served to postpone the running of the statute of limitations in this case, the same terminated in November 1954, more than two years before the commencement of this action.

██ As an alternative theory, appellant advances the contention that the Idaho statute of limitations does not begin to run until the patient knows, or in the exercise of reasonable diligence should know, of the injury and the cause of the disability. Since appellant is not chargeable with knowing of the presence of the needle in her body until August 5, 1955, the action commenced on July 27, 1957, would be timely under this theory.

The courts of Idaho have not passed upon the question thus presented. Looking elsewhere, appellant calls attention to a line of California cases. It has long been the rule in that state that the statute of limitations does not commence to run in a malpractice case until the plaintiff discovers his injury or through the use of reasonable diligence should have discovered it. See Winkler v. Southern California Permanente Medical Group, 141 Cal.App.2d 738, 297 P.2d 728, 732, and cases there cited.

The great weight of authority in this country is to the contrary.[6] Examination of recent decisions fails to reveal any general trend in the direction of the California rule.[7]

To be distinguished, of course, are cases where the patient's lack of knowledge is due to concealment of material facts by the doctor. This element is not present in our case. Also to be distinguished are cases where failure of the doctor to ascertain the presence of a foreign substance is held to be constructive fraud. Where such a theory is recognized, the bar of the statute is avoided by analogy to the statute of limitations applying to actions for fraud. See Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590. This process of reasoning was rejected by the supreme court of Idaho in Trimming v. Howard, supra.

Among the jurisdictions which follow the majority rule are Idaho's neighboring states of Oregon and Washington.[8] In the Lindquist case supra, decided by

4. This view is perhaps best expressed in Schmit v. Esser, supra, 236 N.W. at page 625:

"When does the treatment cease? So long as the relation of physician and patient continues as to the particular injury or malady which he is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased. That does not mean that there must be a formal discharge of the physician or any formal termination of his employment. If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat, or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality."

5. 74 A.L.R. 1317, at 1322 et seq.; 144 A.L.R. 209, at 227 et seq.

6. See the cases collected in the annotations referred to in footnote 5.

7. Recent decisions postponing the running of the statute until discovery of the malpractice: Ayers v. Morgan, 1959, 397 Pa. 282, 154 A.2d 788; City of Miami v. Brooks, Fla., 1954, 70 So.2d 306.

Recent decisions which decline to postpone the running of the statute until discovery of the malpractice: Shearin v. Lloyd, 1957, 246 N.C. 363, 98 S.E.2d 508; Wilder v. St. Joseph Hospital, 1955, 225 Miss. 42, 82 So.2d 651; Lindquist v. Mullen, 1954, 45 Wash.2d 675, 277 P. 2d 724; DeLong v. Campbell, 1952, 157 Ohio St. 22, 104 N.E.2d 177.

8. Wilder v. Haworth, 187 Or. 688, 213 P. 2d 797; Lindquist v. Mullen, supra.

the Washington Supreme Court in 1954, the court said, 277 P.2d at page 725:

"We are satisfied that had the legislature intended the principle of discovery to apply to tort cases based on negligence, it would have specifically said so, as it did with regard to *discovery* in fraud cases."[9]

The quoted observation is equally applicable with regard to Idaho. In both Washington and Idaho the statute of limitations provides that a cause of action on the ground of fraud is not deemed to have accrued until the discovery of the facts constituting the fraud. Compare RCW 4.16.080(4) and Idaho Code, § 5–218, paragraph 4.

Considered from the broader viewpoint of policy, the rule postponing the running of the statute until the malpractice has been discovered has much to recommend it.[10] On the other hand, such a rule does run counter to the central idea behind statutes of limitation. They are statutes of repose designed to promote stability in the affairs of men and avoid the uncertainties and burdens inherent in defending against old claims. This being so, there is good reason for concluding that the legislature should mark out any departure from that basic purpose, as it has done in the case of actions grounded on fraud.[11]

Taking into consideration all of the available data, as discussed above, we are of the view that the courts of Idaho would probably hold that the running of the statute of limitations applicable to malpractice actions is not postponed until the injury has been or should have been discovered, but begins to run at the very latest when actual treatment by the defendant doctor has terminated. It is therefore our opinion that notwithstanding the fact that appellant did not discover the foreign substance in her body until August 5, 1955, her cause of action accrued not later than November 1954 when she ceased receiving treatments from Dr. Bonebrake. Since the action was not commenced by November 1956[12] it was barred under Idaho Code, § 5–219, paragraph 4.

Affirmed.

9. In Peppas v. Marshall & Ilsley Bank, 2 Wis.2d 144, 86 N.W.2d 27, 30, decided in 1957, involving a depositor's action against a bank, this same view was expressed and the following reason was given:

"We believe this to be a proper case in which to invoke the rule of statutory construction of '*expressio unius est exclusio alterius*' (the expression of one thing excludes another). Therefore, having expressly made the accrual of the cause of action dependent upon the discovery of facts by the aggrieved party only in an action for fraud, it will be assumed that the legislature did not intend this stated exception to apply to the other causes of action embraced within sec. 330.19."

10. See, especially, the opinion of Justice Musmanno in Ayers v. Morgan, supra, and the dissenting opinion of Judge Finley in Lindquist v. Mullen, supra.

11. See sections 516.100, 516.140 RSMo 1949, V.A.M.S. indicating that in Missouri it is provided by statute that such a cause of action does not accrue until the damage is sustained and is capable of ascertainment.

12. Appellant thus had one year and three months after the needle was discovered in her body, and nine months after it was actually removed, within which to bring her action.