389 P.2d 224

Leslie W. BILLINGS and Verda Billings, husband and wife, Plaintiffs-Appellants,

v.

SISTERS OF MERCY OF IDAHO, a corporation, d/b/a St. Anthony Hospital, and Lloyd Call and Dean Call, as Executors of the Estate of O. F. Call, Deceased, Defendants-Respondents.

No. 9382.

Supreme Court of Idaho.

Jan. 24, 1964.

Louis F. Racine, Jr., Robert C. Huntley, Jr., and William D. Olson, Pocatello, Ferguson & Glenn, Oakland, Cal., for appellants.

Merrill & Merrill and Hugh C. Maguire, Jr., Pocatello, for respondents.

McQUADE, Justice.

Appellants' amended complaint states that on July 10, 1946, Mrs. Billings was operated upon by Dr. O. F. Call in the Sisters of Mercy Hospital in Pocatello. Shortly after the operation Mrs. Billings began to suffer considerable pain. Subsequently she went to Dr. Harmes in American Falls. She continued under his care through 1947, but apparently he was unable to determine the cause of her difficulties.

From 1948 up into 1958 she consulted various physicians in different parts of the United States in which her husband was employed as a construction superintendent. From the early part of 1958 until May, 1961, she consulted a succession of doctors: Dr. Huron of Iron Mountain, Michigan, Dr. Walton of Concord, California, Dr. Statler of Antioch, California, Dr. Sandlin of Antioch, California, and Dr. Bruno of Pittsburg, California. None of the above physicians successfully diagnosed the nature of Mrs. Billings' affliction.

Finally, in May, 1961, Mrs. Billings was examined by Dr. Brinton of Oakland, California, who concluded that an exploratory operation was necessary. This operation disclosed a gauze sponge in the area where surgery had been performed by Dr. Call on July 10, 1946. She and her husband brought this suit in May, 1962.

Appellants' amended complaint states that Mrs. Billings has suffered constant pain, infection, and sexual depression as a result of the negligent leaving of the sponge in her body. It is also alleged that the negligence of the respondents precipitated a surgical menopause causing Mrs. Billings to suffer "hot flashes" requiring extensive hormonal treatment.

Respondents moved to dismiss the amended complaint on two grounds: 1. The complaint failed to state a claim upon which relief could be granted, and 2. The appellants' claim is barred by the statute of limitations. The trial court did not rule on the first ground, but rendered a judgment of dismissal on the second ground alone. Appellants appeal from the judgment of dismissal. The only question presented on appeal is whether appellants' claim is barred by the statute of limitations.

The applicable statutes are I.C. § 5–201 and § 5–219, which read as follows:

§ 5–201 "Civil actions can only be commenced within the periods prescribed in this chapter after the cause of action shall have accrued, * * *."

§ 5–219 "Within two years: * * *

"4. An action to recover damages for an injury to the person, or for the death of one caused by the wrongful act or neglect of another."

Based on these two statutes a civil action to recover damages for injury to the person, caused by the wrongful act or neglect of another, can only be commenced

within two years after the cause of action shall have accrued. Respondents insist that the cause of action accrued on the day that the sponge was left in Mrs. Billings' body. Appellants contend that the cause of action did not accrue until the sponge was discovered during the exploratory operation. The focal point of this case is to determine when the cause of action accrued.

In this case counsel have cited many cases precisely on the legal point in question. The underlying theme in all of the cases represents a conflict between two basic policies of the law: 1. The policy of discouraging the fostering of stale claims, and 2. The policy of allowing meritorious claimants an opportunity to present their claims.

Mrs. Billings alleges she has been in almost continuous pain since the time of the 1946 operation by Dr. Call and has attempted to find out what caused her so much agony. There is a great deal of difference between her case and the typical plaintiff in this area of cases as she does not appear to have been "sitting on her rights;" and yet, fifteen years passed between the operation and the filing of her complaint. The doctor accused of negligence is dead. (Neither has urged the application of I.C. § 5–327 or § 5–231). His executors, Lloyd and Dean Call, are defendants in this cause.

The earlier cases on this subject were mostly decided in favor of defendants. See Annot., 74 A.L.R. 1317 (1931). Capucci v. Barone, 266 Mass. 578, 165 N.E. 653 (1919), is typical of the earlier cases. As in the instant case, the negligence consisted of leaving a sponge in the surgical wound; the major issue was the statute of limitations. As that court said:

"Upon this branch of the defense the single question is, When did the cause of action accrue? The defendant as a surgeon, on May 11, 1924, impliedly undertook to use care in the operation he was about to perform. Any act of misconduct or negligence on his part in the service undertaken was a breach of his contract, which gave rise to a right of action in contract or tort, and the statutory period began to run at that time, and not when the actual damage results or is ascertained, as the plaintiff contends. The damage sustained by the wrong done is not the cause of action; and the statute is a bar to the original cause of action although the damages may be nominal, and to all the consequential damages resulting from it though such damages may be substantial and not foreseen."

It was also held to be well established that the bare fact that a plaintiff was unable to discover the cause of his suffering was

immaterial. In Murray v. Allen, 103 Vt. 373, 154 A. 678 (1931), plaintiff, after having been operated upon in 1923, did not discover that a sponge was left in her body until 1929. The court therein stated:

"The plaintiff argues that the right of action did not accrue until the fact that the gauze had not been removed was discovered, and that, consequently, the statutory period of limitation did not begin to run until that time. But the right of action accrued when the negligent act upon which the action is based took place, and not when the consequential damage became known. This principle has been applied in numerous cases wherein the facts were very similar to those in the case before us."

In those earlier cases there were only three possible exceptions to the rule that the cause of action accrues on the day the foreign object is closed in the wound. The first one, the continuing negligence exception, is usually stated as follows: when a doctor leaves a foreign object in the body of a patient and continues to treat him thereafter, the doctor is said to be not only negligent in his initial action, but also negligent in allowing the object to remain while the patient is still under his care. Sly v. Van Lengen, 120 Misc. 420, 198 N.Y. S. 608 (1923). The second exception then recognized was called the contract theory.

Plaintiffs in this area have successfully avoided the tort statute of limitations by couching their complaints in terms of contract for the longer period of limitation, instead of the tort statute of limitations. In Sellers v. Noah, 209 Ala. 103, 95 So. 167 (1923), a needle was left in plaintiff's body. He alleged a breach of contract and successfully avoided the earlier commencement of the limitations period. In the third exception, the fraudulent concealment theory, the statute of limitations is held not to begin to run until the cause of action is discovered or could have been discovered by reasonable diligence on the part of the injured party. This is based upon the rationale that a wrongdoer is not permitted to profit from his fraudulent conduct. At the time of the 74 A.L.R. annotation most courts that recognized this rule placed a high burden of proof on the plaintiff. A plaintiff was required to show some affirmative act of concealment on the part of the defendant. In Tulloch v. Haselo, 218 App. Div. 313, 218 N.Y.S. 139 (1926), plaintiff alleged that the defendant negligently extracted a tooth and let it fall into her throat from whence it entered the lung. She further alleged he had fraudulently concealed from her the fact that he had let the tooth fall down her throat. The court held that she had not successfully alleged fraud. " * * * There is nothing alleged from which we may infer any intentional fraudulent misrepresentation of fact as to the

presence of a tooth in the lung * * *." In Bodne v. Austin, 156 Tenn. 366, 2 S.W. 2d 104 (1928), plaintiff alleged that the defendant negligently left a broken tooth in her gum and that he carelessly and negligently failed to disclose the fact. The court held that the averment was insufficient to make out fraud. It further stated that it could not assume fraud in order to toll the statute of limitations. In Brown v. Grinsted, 212 Mo.App. 533, 252 S.W. 973 (1923), under facts similar to those at hand, the court held that the surgeon must know of the presence of the sponge in plaintiff's body before he could be held to be guilty of fraud.

Annot., 144 A.L.R. 209 (1943), presents the second A.L.R. effort on this topic. In 1943 it was still stated as a general rule that the cause of action accrues on the day that the foreign object is left in the surgical wound. Two jurisdictions by that time took exception to the rule. In Huysman v. Kirsch, 6 Cal.2d 302, 57 P.2d 908 (1936), the defendant surgeon failed to remove a rubber tube from the wound of an operation. The defense was the statute of limitations. Inter alia the court held, reasoning from a workman's compensation case, that the plaintiff's cause of action did not accrue until she could have, through reasonable care, ascertained the cause of her physical distress. In Louisiana, a similar result had been reached two years earlier in Perrin v. Rodriguez, La.App., 153 So. 555 (1934). In the Perrin case, however, the rule was not so clearly expressed as it was in Huysman v. Kirsch, supra.

The contract rule and the continuing negligence rule were still recognized exceptions in 1943, as was the fraudulent concealment rule. In so far as fraudulent concealment is concerned it appeared to be still very much the rule that a plaintiff had to prove some affirmative act of concealment on the part of the defendant. Silvertooth v. Shallenberger, 49 Ga.App. 133, 174 S.E. 365 (1934). There are, however, scattered cases lessening this necessity by putting emphasis on the fiduciary relationship between doctor and patient. Burton v. Tribble, 189 Ark. 58, 70 S.W.2d 503 (1934), Thompson v. Barnard, (Tex.Civ.App.) 142 S.W.2d 238 (1940). These cases reduced a plaintiff's burden considerably.

Annot., 80 A.L.R.2d 368 (1961), discusses some of the more recent changes in judicial thinking. In the first place, the contract rule has fallen into virtual disuse. Secondly, the continuing negligence rule has been accepted in a majority of jurisdictions. Thirdly, the discovery rule is no longer limited to California and Louisiana, but has also been accepted in the following jurisdictions: Pennsylvania, Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959); New Jersey, Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961); Oklahoma, Seitz v. Jones, Okla., 370 P.2d 300 (1961); Nebraska,

Spath v. Morrow, 174 Neb. 38, 115 N.W.2d 581 (1962); Missouri, (by statute) Mo.Rev. Stat. § 516.140, cited in Thatcher v. De Tar, 351 Mo. 603, 173 S.W.2d 760 (1943); Florida, City of Miami v. Brooks, Fla., 70 So.2d 306 (1954); and possibly Texas, McFarland v. Connally, Tex.Civ.App., 252 S.W.2d 486 (1952).

The fraudulent concealment exception has been extensively liberalized and is now receiving greater emphasis. As was stated in Note, 32 Ind.L.J. 528 at 536 (1957), " * * * In early cases a strict adherence to a requirement of affirmative misrepresentations as to the existence of an injury precluded relief in situations where the physician utilized his most effective weapon of concealment: that of mere silence. Only affirmative conduct, it was thought, involved that degree of moral turpitude deemed essential to invocation of the doctrine. Later cases have abandoned the requirement of affirmative conduct, and it is now generally held that the fiduciary relationship between physician and patient imposes a duty of disclosure, breach of which constitutes fraudulent concealment. * * *"

At least six jurisdictions have accepted the more liberalized version of the fraudulent concealment rule. In Crossett Health Center v. Croswell, 221 Ark. 874, 256 S.W.2d 548 (1953), steel wire was left in the plaintiff's abdomen. The court was asked to rule whether or not plaintiff's cause of action was barred by the statute of limitations. Despite the fact that no specific facts constituting concealment are stated in the opinion, the court held that fraudulent concealment existed and that plaintiff's action was not barred. In Baker v. Hendrix, 126 W. Va. 37, 27 S.E.2d 275 (1943), a sponge was left in plaintiff's abdomen. She made very general allegations of fraud which seemed to establish merely that the defendant had remained silent. The court held that such allegations, if true, were sufficient to toll the statute of limitations. In Guy v. Schuldt, 236 Ind. 101, 138 N.E.2d 891 (1956), metal was left in plaintiff's leg. No allegations of fraud were contained in the complaint. Nevertheless, the court refused to bar plaintiff's cause of action. They held that the statute would be tolled if the plaintiff could prove that defendant's conduct was fraudulent. In Hinkle v. Hargens, 76 S. D. 520, 81 N.W.2d 888 (1957), a needle was left in plaintiff's back. The plaintiff did little more than allege silence on the part of the defendant. The court held that if plaintiff could prove this allegation, then the statute of limitations would be tolled. They felt that silence combined with the existing fiduciary relationship was sufficient to constitute fraud on the part of the defendant. In Arizona and Colorado the liberalization of the fraudulent concealment rule is indicated by the courts' use of the term "constructive fraud." In essence, these two jurisdictions have dispensed with

the requirement of scienter. In Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590 (1948), a dentist left parts of broken equipment in his patient's jaw. The Arizona court reasoned that, by the exercise of reasonable diligence, the defendant should have known that his equipment had broken off. Good medical practice would have required him to locate and remove this equipment. His failure to remove or at least inform plaintiff, constituted constructive fraud, tolling the statute of limitations. In Rosane v. Senger, 112 Colo. 363, 149 P.2d 372 (1944), surgical gauze was left in plaintiff's body. The court held that this fact alone was sufficient to constitute constructive fraud. They reasoned that constructive fraud should be applied in any situation where defendant's negligence is concealed from the plaintiff, no matter how innocently; therefore, plaintiff's action was held not to be barred by the statute of limitations.

It is obvious that the above mentioned jurisdictions, through liberal use of the fraudulent concealment exception, achieve the same result as do those jurisdictions which accept the discovery rule. In both types of jurisdictions plaintiffs who would formerly have lost their cases on the pleadings are allowed entrance into court to try their actions.

Thus far we have considered the development of four exceptions to the general rule. Appellant asks us to consider yet another,

the inherently unknowable harm exception. So far as we can tell, this exception has never been used in the foreign object cases. Its application had been restricted to cases in the workman's compensation area dealing with industrial disease. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), is typical of the cases in this area. That plaintiff contracted silicosis. He did not bring suit until 1941. Thompson argued that since Urie had been exposed to silica dust since 1910, his cause of action must have accrued long before he instituted the action. The Supreme Court, however, held for the plaintiff. It was their opinion that plaintiff's cause of action did not accrue until after he had received notice of the invasion of his legal rights. As the Court stated:

"If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, * * *. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms · had not yet obtruded on his consciousness would constitute waiver of his right to com-

pensation at the ultimate day of discovery and disability."

From the 1930's on, we have seen the courts retreat from an almost uniform position to one which often permits the trial of these actions. This change has been pointed out by a Note in 32 Ind.L.J. 528 (1957) at page 529:

"At a very early period the courts did not share the enthusiasm of the legislature for the statute of limitations; it was considered an unconscionable defense, strictly construed against the party seeking to bring himself within the statute's provisions. After the courts came to consider such statutes beneficial, it was generally recognized that inflexible application would result in the sacrifice of legitimate claims along with the spurious, and numerous exceptions were always implied. Limitations applicable to malpractice suits presented a singular exception to the general lenient attitude, however, and it is only since the early '30s that devices used for removing the statutory bar in other cases have been employed extensively in malpractice actions."

Appellants also ask us to accept continuing negligence as one of the exceptions to what has been termed the general rule. Annot., 74 A.L.R. 1317 (1931), Annot., 144 A.L.R. 209 (1943), Annot., 80 A.L.R.2d 368

(1961) Appellants terminated their relationship with the defendant doctor shortly after the operation. As this is not an issue, we do not feel justified in ruling whether Idaho would accept such a doctrine. Appellants also ask us to accept an extension to the continuing negligence rule; that the physician's breach of duty continues until the foreign object is removed, and the period of limitations, therefore, does not begin to run while the foreign object unknowingly remains within the patient's body. This rule was apparently first announced in Ohio in Gillette v. Tucker, 67 Ohio St. 106, 65 N.E. 865 (1902). The doctrine has since been rejected by Ohio and other courts and is now acknowledged only in California, Huysman v. Kirsch, supra, and possibly in Pennsylvania. Ayers v. Morgan, supra. In view of the conclusion we reach herein, we need not discuss this doctrine further.

We also find it impossible, in this context, to accept the inherently unknowable harm exception as stated in Urie v. Thompson, supra. Although that case has its similarities to the case at hand, this exception has never been more than briefly mentioned in the medical malpractice foreign object cases. Because of this, and the obvious dissimilarities (the legislative background and the difficulty of ascertaining when the injury occurred) we find it unwise to attempt to use it in the instant case.

Use of the contract rule has been attempted in Idaho, Trimming v. Howard, 52 Idaho 412, 16 P.2d 661 (1932). In that case we rejected its use and held that the gist of a malpractice action is negligence and not a breach of the contract of employment. While the contract rule is still used occasionally, Robins v. Finestone, 308 N.Y. 543, 127 N.E.2d 330 (1955), it is generally recognized as being more of a device than a valid rule of law. Note, 64 W.Va.L.Rev. 412 (1962).

Appellants contend that we should accept the liberalized version of the fraudulent concealment rule. This we are unable to do. As was stated in Trimming v. Howard, supra, 52 Idaho at page 416, 16 P.2d at page 662, when plaintiff attempted to invoke the fraud statute of limitations, " * * * [F]raud or mistake must be the substantial causes of action: the action must rest solely upon them, and their proof be primarily essential to any relief. * * *"

It is clear that we are not precluded from adhering to the discovery doctrine [1] because of our decision in Trimming v. Howard, supra. In that case, the defendant, in attempting to treat the plaintiff, broke off a portion of a hypodermic needle in the plaintiff's back. The defendant told plaintiff of this, and performed an operation to remove the needle. The defendant advised the plaintiff the needle fragment had been removed; however, four years later the plaintiff learned that the needle fragment was still in his back. Plaintiff presented two causes of action to the court; the first was based upon the unsuccessful operation, and the second was based upon the physician's failure to disclose that he had not removed the needle fragment. This court, however, in its decision, treated the case as if it were based upon the original act of breaking the needle and not the operation. It is stated at page 416 of the Idaho Reports [at page 416 of 52 Idaho, at page 662 of 16 P.2d]; " * * * The original injury, be it caused by carelessness, negligence, misconduct, or whatnot, remains the sole cause of action; * * *." The question of discovery never entered into this court's decision as the plaintiff knew of the presence of the needle fragment in his back on the day it was broken off therein. Relying upon representations which had been made by the defendant-physician, Trimming alleged that he believed the needle had been removed by the operation. Furthermore, that plaintiff did not present the discovery doctrine to the

1. Huysman v. Kirsch, 6 Cal.2d 302, 57 P.2d 908 (1936); Perrin v. Rodriquez, 153 So. 555 (La.App.1934); Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959); Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961); Seitz v. Jones, Okl., 370 P.2d 300 (1961); Spath v. Morrow, 174 Neb. 38, 115 N.W.2d 581 (1962); Thatcher v. De Tar, 351 Mo. 603, 173 S.W.2d 760 (1943); City of Miami v. Brooks, 70 So.2d 306 (Fla.1954); McFarland v. Connally, 252 S.W.2d 486 (Tex.Civ.App. 1952).

court as he based his case solely upon the contract for surgery and fraudulent concealment. Thus the question of the application of the discovery doctrine is one of first impression in Idaho.

Respondents' position is illustrated by the case of De Long v. Campbell, 157 Ohio St. 22, 104 N.E.2d 177 (1952). It was held therein that plaintiff's cause of action accrued at the time of the operation and not upon the discovery of the foreign object. The court reasoned that the plaintiff's right to sue accrued at the time the foreign object was left in his body. This reasoning has been subjected to much criticism. Indeed, it appears that most of the courts which adhere to the rule as adopted in the De Long case have merely transferred the rule that applies to ordinary torts without noticing the fact that they are dealing with an entirely different situation. Of course, when a plaintiff is run down by an automobile, it is clear that his cause of action will accrue on that date. This is not only because he has a right to sue, but also because he can use judicial process to secure enforcement of that right. Where a surgeon negligently leaves a sponge in the body of a plaintiff, while the plaintiff might possess some potential right to sue, he has no means of developing that right, or acting upon it until he is able to discover the negligence of the surgeon. It is more logical to follow the reasoning stated in Note, Developments in the Law: Statutes of Limitations, 63 Har.L.Rev. 1177 at 1205 (1950), as follows, " * * * the 'cause of action' which commences the limitations period should not refer to the 'technical' breach of duty which determines whether the plaintiff has any legal right, but to the existence of a practical remedy."

Relative to legislative intent, respondents suggest that the legislature clearly intended to preclude adherence to the discovery doctrine by mentioning discovery in the fraud section of the statute of limitations and not mentioning it anywhere else. These are two distinct causes of action and their application is upon entirely different theories and proof.

In one context or another, it has been stated that statutes of limitations are statutes of repose, the object of which is to prevent fraudulent and stale actions from springing up after a great lapse of time. 53 C.J.S. Limitations of Actions, § 1 (1948). These considerations are not present in a foreign object case. First of all, the existence of a sponge, or gauze, or pin in the body of a plaintiff negatives fraud. Secondly, we do not often encounter a plaintiff who is guilty of "sitting on his rights." If one is unaware that he has any rights, it cannot be said that he is "sitting" on them. As was stated in Fernandi v. Strully, supra, 173 A.2d at 286, a case involving the exact considerations as are present here:

"It must be borne in mind that Mrs. Fernandi's claim does not raise questions as to her credibility nor does it

rest on matters of professional diagnosis, judgment or discretion. It rests on the presence of a foreign object within her abdomen following an operation performed upon her by the defendant-doctors. Here the lapse of time does not entail the danger of a false or frivolous claim, nor the danger of a speculative or uncertain claim. The circumstances do not permit the suggestion that Mrs. Fernandi may have knowingly slept on her rights but, on the contrary, establish that the cause of action was unknown and unknowable to her until shortly before she instituted suit. Justice cries out that she fairly be afforded a day in court and it appears evident to us that this may be done, at least in this highly confined type of case, without any undue impairment of the two-year limitation or the considerations of repose which underlie it. If, as is to be hoped, the resulting jeopardy to defendants produces a greater measure of care in connection with surgical operations, so much the better."

Respondents assert strenuously that the discovery doctrine is a minority rule. Respondents also argue that only eight, or at the most, nine jurisdictions have accepted this rule. Respondents fail to point out, however, that the discovery doctrine is only one of many exceptions to the so-called "general rule" that they would have us ac-

cept. As noted earlier, at least six jurisdictions accept the liberalized version of the fraudulent concealment doctrine. Continuing negligence is accepted by a majority of the jurisdictions. Annot., 80 A.L.R.2d, supra, at 380. The reasoning behind Urie v. Thompson, supra, has created yet another exception in the workman's compensation area. Even Roybal v. White, 72 N.M. 285, 383 P.2d 250 (1963), one of respondents' strongest cases, recognizes the hardships created by a strict adherence to the "general rule" and suggests that were fraud pleaded the result would be entirely different. Indeed, it appears that most jurisdictions, when faced with the set of facts we have presented herein would, on one theory or another, allow appellants to come into court and present their claims. To apply the label of "general rule" to respondents' position and minority rule to the discovery doctrine is not only misleading but erroneous. If, however, it is necessary to apply labels, it appears that the so-called "general rule" as stated in A.L.R. is in fact the minority rule.

In reality, the "general rule" has little to recommend it. It is neither the position of a majority of the jurisdictions nor is it firmly based on considerations of reason or justice. We will, therefore, adhere to the following rule: where a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance

of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body. Seitz v. Jones, supra.

■ Respondents have filed a motion to strike from the transcript on appeal certain instruments on the grounds that they are immaterial, superseded and are a nullity. The contested instruments fall into two categories. The first group consists of the original complaint and the instruments filed in favor of, or in opposition to it. These were superseded by the filing of the amended complaint. When an amended complaint is filed, it takes the place of the original, and all subsequent proceedings in the case are based upon the amended pleading. Ryan v. Old Veteran Mining Co., 35 Idaho 637, 207 P. 1076 (1922), Armstrong v. Henderson, 16 Idaho 566, 102 P. 361 (1909).

■ The second category consists of instruments filed relative to the discovery procedure on production of documents. These instruments are immaterial to the ruling of the trial court and no error is predicated thereon. The only issue involved in the appeal of this case is the action of the trial judge in respect to the amended complaint. Respondents' motion to strike is therefore granted. Where papers are included in the transcript which are not properly an esential part thereof, the party inserting such papers will be required to pay the additional expense of transcribing the same. Taylor v. McCormick, 8 Idaho 37, 66 P. 805 (1901).

Reversed and remanded for further proceedings.

Costs to appellants, less the transcript costs mentioned herein.

KNUDSON, C. J., and McFADDEN and TAYLOR, JJ., concur.

SMITH, Justice (dissenting).

I dissent.

In view of the dissimilarity in the rulings of appellate courts in the area of the case at bar, no useful purpose can be served in lengthy discussions of aspects of the diversity in reasoning of the various decisions. I shall limit this dissent to discussion of the law as it exists in Idaho, based upon legislative policy not in contravention of basic concepts of constitutional law and judicial interpretations.

The basic facts are that Dr. Call, now deceased, performed an operation upon appellant Mrs. Billings, July 10, 1946. The period of aftercare, if such there was, did not continue later than October 10, 1946, when she sought the services of another physician. Thereafter she consulted various physicians and surgeons in continuous succession. June 2, 1961, a pelvic explora-

tory operation revealed a gauze sponge in the area of the original operation. She commenced this action May 16, 1962. Respondents interposed the defense of the statute of limitations, I.C. § 5–219, and grounded thereon their motion to dismiss. The trial court granted the motion and entered judgment of dismissal without leave to amend, May 2, 1963. This appeal resulted.

I.C. § 5–201 provides that civil actions can only be commenced within the periods prescribed in the chapter "after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute." That section must be read in pari materia with I.C. § 5–219 which provides, inter alia, for the commencement of an action within two years "to recover damages for an injury to the person." Such an action is not a special case in which a limitation applies, different than the period of two years "after the cause of the action shall have accrued." The following are notable examples of "special cases":

1. I.C. § 5–218(4) – "An action for relief on the ground of fraud or mistake" shall not "be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

2. I.C. § 5–221 – "Actions on claims against a county which have been rejected by the board of commissioners must be commenced within six months after the first rejection thereof by such board."

3. I.C. § 5–222 – "an action brought to recover a balance due upon a mutual, open and current account, * * * the cause of action is deemed to have accrued from the time of the last item proved in the account on either side."

4. I.C. § 5–223 – "actions brought to recover money or property deposited with any bank, banker, trust company or saving and loan society, no limitation begins to run until after an authorized demand."

5. I.C. § 5–237 – "actions against directors or stockholders of a corporation to recover a penalty or forfeiture imposed, or to enforce a liability created by law * * must be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached, or the liability was created."

In this action no situation is pleaded as tolling the statute of limitations, I.C. §§ 5–229 et seq.; nor is any circumstance pleaded or disclosed to show that it is a

special case, as in fraud or mistake where the cause of action *shall not be deemed* to have accrued until discovery of the facts constituting the fraud or mistake. I.C. §§ 5-201 and 5-218(4) in pari materia. For discussion of the conclusive presumption "shall be deemed," see Swanson v. Employment Security Agency, 81 Idaho 385, 342 P. 2d 714 (1959).

I agree with the majority, that the basic question is: When did the cause of action accrue? Did the cause of action accrue at the time of commission of the negligent act, July 10, 1946, or on July 2, 1961, the date of discovery of the negligent act? Can the conclusive presumption of a deemed date of accrual of the cause of action to coincide with the date of discovery be read into the statute of limitations by judicial imposition, such a presumption not having been imposed by legislative fiat?

Tantish v. Szendey, 158 Me. 228, 182 A. 2d 660 (1962) involved a factual situation similar as herein. In that case a surgeon failed to remove tubing inserted in a patient's back in the course of an operation on September 5, 1956, with treatment ending October 27, 1956. The patient was not aware of the presence of the tubing in her back until discovery July 21, 1958. She commenced the action within two years thereafter, on July 20, 1960. Maine's statute of limitations in part provided:

"Actions for * * * malpractice of physicians and all others engaged in the healing art shall be commenced within 2 years after the cause of action accrues." R.S. c. 112, § 93.

The Supreme Judicial Court of Maine in ruling that the action was barred by the two-year statute of limitations, not only answered the decisive questions when the action accrued, but announced the legislative and public policy underlying the statute of limitations, in lucid language as follows:

"The decisive question is this: When did the action accrue? If the action accrued at the time of the operation in September 1956, the statute is a bar. If the action accrued when the tubing was discovered in July 1958, the action was seasonably brought

"In our opinion the action accrued at the time of the operation and specifically when the surgeon failed to remove the tubing on completion of the operation. The nature and time of the negligent act charged is tied plainly and with certainty to the fact of the operation.

"On the one hand there is what appears to be justice for the patient in commencing the accrual of the right of action when the negligence of the defendant is discovered, or reasonably should have been discovered and not before. How, says the patient, may I as a practical matter bring an action until the wrong, that is to say, the failure

to remove the foreign substance, is known to me?

"On the other hand, the surgeon may with justice urge that the statute of limitations is a statute of repose designed by the Legislature to cut off claims which grow increasingly stale with greater age. The production of evidence and records necessary to meet malpractice claims becomes progressively more difficult with time.

"Meritorious claims may, it is true, be barred by commencing the running of the statute from the time of the negligent act when discovery is later made. Statutes of limitations in general, however, in their operation cut off both meritorious and unmeritorious claims. It is well understood that the purpose of such statutes is to bring repose and security to persons who might otherwise be faced for long periods with the possibility of meeting claims under more difficult conditions. The decision here rests upon the choice to be made between competing policies.

"In the event the discovery of the legal wrong comes after the expiration of the statutory period of limitations, there is obviously a hardship to the plaintiff. The possibility of hardship, however, does not, in our opinion, outweigh the need of certainty in establishing the time when an action accrues under the circumstances here disclosed. * * *

" * * * The relative lack of hardship to the plaintiff arising from the discovery before and not after the two-year period, however, is given no weight by us in determining the applicable rule. It is more properly material for the Legislature to consider in fixing the statutory period."

In the case at bar the majority opinion states that "[t]he underlying theme in all of the cases represents a conflict between two basic policies of the law: 1. The policy of discouraging the fostering of stale claims, and 2. The policy of allowing meritorious claimants an opportunity to present their claims." But *Tantish v. Szendey*, supra, and the many authorities therein cited disclose the sound reasoning, that a claim, though stale, may yet be meritorious; and that statutes of limitations, in their inflexibility, operate without reference to the merits and cut off both meritorious and unmeritorious claims. It is emphasized that statutes of limitations are statutes of repose, which require that litigation be initiated within the times prescribed by the legislature.

In areas of criminal law, where the interests of society are paramount the legislature has deemed it advisable to prescribe periods of time within which criminal actions must be commenced. See I.C. §§ 19–

402 and 19–403 dealing with misdemeanors, and felonies other than murder. This Court has recognized the power of the legislature to enact legislation in that area. State v. Morris, 81 Idaho 267, 340 P.2d 447 (1959); State v. Bilboa, 38 Idaho 92, 213 P. 1025, 222 P. 785 (1923); State v. Steensland, 33 Idaho 529, 195 P. 1080, 13 A.L.R. 1442 (1921).

In workmen's compensation, again in the area of public welfare, this Court has refused to apply the discovery doctrine, recognizing that though a statute of limitations, I.C. § 72–402 (formerly I.C.A. § 43–1202) works a hardship in that injury attributable to the accident may not become manifest (akin to discovery) until after the expiration of the limitations period prescribed for the commencement of proceedings seeking recovery, nevertheless, the court must be bound by the mandate of the legislature and that "the remedy is with the Legislature". Moody v. State Highway Department, 56 Idaho 21, 48 P.2d 1108 (1935).

In the majority opinion it is stated that the general rule which disallows the action has little to recommend it, since it is "neither the position of a majority of the jurisdictions nor is it firmly based on considerations of reason or justice." While perhaps there is a difference of opinion as to just what the majority rule is (see Anno. 80 A.L.R.2d 368), that approach should not be accorded finality in arriving at a correct disposition of the legal questions involved herein. In considering the adoption of a particular doctrine to be superimposed by judicial fiat, the various arguments pro and con, as well as the decisions in our own jurisdictions bearing upon the subject, are to be accorded more judicial weight and importance than the mere numerical weight of authority, if such there be.

The conflict in the various appellate court decisions shows the existence of turmoil in the area under consideration. By way of comparison, Lindquist v. Mullen, 45 Wash. 2d 675, 277 P.2d 724 (1954) and De Long v. Campbell, 157 Ohio St. 22, 104 N.E.2d 177 (1952) deny relief, while Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961) and Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959) take the opposite view. Each of those decisions, highly informative and well written, contains a dissenting opinion. In such a situation, the decisions of appellate courts, involving the particular statutes of their respective jurisdictions, offer but slight assistance in deciding like or similar questions, particularly where our own appellate court must look to its decisions and the Idaho Code in the premises, as well as to the interpretative decisions of the Ninth Circuit Court of Appeals which considers itself bound by the law of this State.

Moreover, the legislature at sundry times has amended the statute of limitations, I.C. §§ 5–201 et seq., which indicates that the

legislature has not remained static in this area, nor unmindful of the importance of substantively limiting the time within which various actions may be commenced.

I return to the statute of limitations, I.C. Tit. 5, c. 2, wherein the legislature has not thus far fixed discovery as the time of accrual of various causes of action by imposition of a conclusive presumption, as it has in certain instances, notably I.C. §§ 5–218 (4), 5–222 and 5–237. While there is some authority for the proposition, that interpreting when a cause of action shall accrue is a judicial and not a legislative function, that view has been judicially countered by invoking the rule of statutory construction expressio unius est exclusio alterius (the expression of one thing is the exclusion of another). Applied herein, having made the deemed accrual of the cause of action in certain instances to be dependent upon the discovery of facts by the aggrieved party, the legislature did not intend such exception to apply to the accrual of the cause of action for recovery of damage for personal injury caused by the tortious act of another. The Washington Supreme Court employed that line of reasoning in Lindquist v. Mullen supra; and the Ninth Circuit Court of Appeals, in Summers v. Wallace Hospital, 276 F.2d 831, at 835 (1960), said it was "equally applicable with regard to Idaho." Other recent cases employing the identical theory are Roybal v. White, 72 N.M. 285, 383 P.2d 250 (1963) and Peppas v. Marshall

& Ilsley Bank, 2 Wis.2d 144, 86 N.W.2d 27 (1957). Moreover, implicit in those and similar decisions is the recognition of such legislation as *substantive law.*

The majority opinion points out that I.C. § 5–219(4), as amended in 1903, was (and it is) decidedly in favor of disallowing the present action. Such was the law, recognized in the early annotation, 74 A.L.R. 1317 (1931), cited with approval in Trimming v. Howard, 52 Idaho 412, 16 P.2d 661 (1932), and interpretated therein, that the legislature intended that the statute of limitations should commence to run from the date of the wrongful act or omission, rather than from the date of its discovery or of injury flowing therefrom.

Trimming v. Howard, supra, and the interpretative decision, Summers v. Wallace Hospital, supra, by the Ninth Circuit Court of Appeals, stand for the firm proposition that a cause of action to recover damages for injury to the person, I.C. §§ 5–201 and 5–219(4), begins to run from the time of commission of the negligent act from which the injury results, and not from a time of discovery. This Court in Trimming v. Howard, supra, referring to the statute of limitations, then C.S. § 6612(4), now I.C. § 5–219(4), stated:

"* * * the great majority rule is that actions against physicians, surgeons, and dentists for injuries resulting from negligence are subject to the

bar of the statute relating to injury to the person or death caused by the wrongful act or neglect of another. [citing 74 A.L.R.]" Supra at page 417.

This Court then held that "appellant's cause of action arose on July 4, 1926, when the broken needle was left in his back," i. e., at the time of commission of the tortious act.

In Summers v. Wallace Hospital, supra, decided 28 years later, appellant advanced the contention that the bar of Idaho's statute, I.C. §§ 5-201 and 5-219(4), does not commence to run "until the patient knows, or in the exercise of reasonable diligence should know, of the injury and the cause of the disability," i. e., from the time of discovery. The Ninth Circuit Court of Appeals, after observing that the courts of Idaho had not passed upon this question, referred to California decisions which adhere to the discovery doctrine. See Winkler v. Southern California Perm. Med. Group, 141 Cal.App.2d 738, 297 P.2d 728, 732, (1956), and cases there cited. The Court then stated:

"The great weight of authority in this country is to the contrary."

Citing Anno. 74 A.L.R. 1317, at 1322 et seq., and Anno. 144 A.L.R. 209 at 227 et seq., and continuing the Court said:

"Examination of recent decisions fails to reveal any general trend in the direction of the California rule."

The Court cited, as favoring the discovery doctrine, Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959), and City of Miami v. Brooks, (Fla.1954), 70 So.2d 306, and as declining to follow such doctrine, Shearin v. Lloyd, 246 N.C. 363, 98 S.E.2d 508 (1957); Wilder v. St. Joseph Hospital, 225 Miss. 42, 82 So.2d 651 (1955); Lindquist v. Mullen, 45 Wash.2d 675, 277 P.2d 724 (1954); De Long v. Campbell, 157 Ohio St. 22, 104 N.E. 2d 177 (1952).

The Court in Summers v. Wallace Hospital, supra, in effect regarded as substantive law the provision of I.C. § 5-218(4), that an action grounded upon fraud shall not be deemed to have accrued until discovery of the facts constituting the fraud. The Supreme Court of Washington in Lindquist v. Mullen, supra, ruled to the same effect in language as follows:

"We are satisfied that had the legislature intended the principle of discovery to apply to tort cases based on negligence, it would have specifically said so, as it did with regard to *discovery* in fraud cases."

New Mexico's Supreme Court ruled likewise in its recent decision, Roybal v. White, 72 N.M. 285, 383 P.2d 250 (1963). The Supreme Court of Oregon in Wilder v. Haworth, 187 Or. 688, 213 P.2d 797 (1949), ruled in like manner, refusing to be won over by the argument that the Court should ignore precedent and apply the doctrine

of discovery as resting upon "broad considerations of justice"; said the Court, " * * * the constitutional authority of a court of law is limited to the interpretation and enforcement of the law as it is written."

In the Pennsylvania case of Ayers v. Morgan, supra, the concurring opinion advances the premise that to adhere to the discovery doctrine in malpractice cases "is not judicial legislation but is instead constitutional interpretation," a legitimate function of the judiciary in the light of Art. I, Sec. 11 of Pennsylvania's Constitution, P.S., which provides in effect that every man shall have a remedy in due course of law for injury to his person or property. Idaho's Constitution, Art. I, § 18 is a similar provision intended for the judicial protection of those rights. The Supreme Court of Wisconsin, in Reistad v. Manz, 11 Wis.2d 155, 105 N.W.2d 324 (1960), dismissed such a contention based upon a similar provision of Wisconsin's Constitution, W.S.A.Const., Art. I, § 9, upon refusing to apply the discovery doctrine in a malpractice case. The following statement from Moon v. Bullock, 65 Idaho 594, 151 P.2d 765 (1944), supports this same conclusion:

> "The declaration in the Bill of Rights that courts shall afford a remedy for 'every injury of person, property or character' does not of itself change existing law, and does not empower courts

to legislate, or to amend, modify, or repeal laws to meet their ideas of what is 'natural justice'." Supra 65 Idaho at 606–607, 151 P.2d at 771.

Idaho Constitution, Art. I, § 18 is intended to afford judicial process to all persons, and a speedy remedy for such injuries as the law recognizes as actionable. And where a cause of action cannot be sustained due to the bar of a particular statute of limitations, an argument resting upon denial of a remedy is fallacious.

The majority opinion concedes that the alleged negligent act in the case at bar occurred July 10, 1946, the day of the operation upon Mrs. Billings. The opinion then proceeds upon the theory that a change in the statute of limitations should be interposed as regards when an action accrues for recovery of damage for injury to the person by inclusion of the conclusive presumption, that the cause of action be deemed to have accrued as of the date of discovery, and not when the chose in action comes into existence by commission of the tortious act.

As heretofore pointed out, the legislature at sundry times has amended sections of the statute of limitations, and has left others unchanged from the time of original adoption in 1881. The legislature, however, has not as yet imposed a discovery date as the deemed date of accrual of a cause of action grounded upon personal injury. Such represents the continuing policy on the part of

the legislature which policy should not be altered by judicial fiat simply because in the particulars under consideration, it may be considered harsh in its application to malpractice cases.

I point to the action of the Missouri legislature which eliminated any doubt as to when a cause of action accrues, in the same type of case as here; it enacted a statute which provides that a cause of action "shall not be deemed to accrue [until] * * * the damage resulting therefrom is sustained and is capable of ascertainment." Mo.Rev. Stat. § 516.100; Thatcher v. De Tar, 351 Mo. 603, 173 S.W.2d 760 (1943).

Until and unless I.C. § 5–219(4) may be amended so as to interpose therein the conclusive presumption that a cause of action growing out of a personal injury shall be deemed to have accrued at a different date than as of the time of commission of the tortious act, it is the duty of the judiciary to apply the plain words of the statute as presently written. The judiciary should not enter into the field of determining policy reserved to the legislative branch of the government. Oneida County Fair Board v. Smylie, 86 Idaho 341, 386 P.2d 374 (1963).

In Jewett v. Williams, 84 Idaho 93, 369 P.2d 590 (1962), this Court recognized the danger inherent in the encroachment of the judiciary upon the coordinate branches of government, but observed that it is the solemn duty of this Court to interpret the laws as enacted, and whenever possible, to prevent infraction upon the Constitution. This Court also recognized as an exception to the rule of stare decisis, that long standing law can be altered by judicial decision *"where grave reason exists."* (Emphasis supplied). The case at bar does not involve determinations affecting the public health, welfare, safety or morals; nor any encroachment upon the rights guaranteed by Idaho Const., Art. I, § 18, as hereinbefore shown. Thus, grave reason does not exist for a construction of the statute of limitations, I.C. §§ 5–201 and 5–219(4) involved herein, which departs from the plain phraseology thereof. Any such change should be left to the legislature.

The judgment of dismissal of the trial court should be affirmed.