**Mary BURKE and Albert O. Burke, Plaintiffs,**

v.

**WASHINGTON HOSPITAL CENTER and Ernest W. Lowe, Defendants.**

**Civ. A. No. 2975-67.**

United States District Court District of Columbia.

Dec. 6, 1968.

A. Lillian C. Kennedy and Mabel D. Haden, Washington, D. C., for plaintiffs.

John L. Laskey, Washington, D.C., for defendant Washington Hospital Center.

John L. Ridge, Jr., and J. Harry Welch, Washington, D.C., for defendant Lowe.

## OPINION

HOLTZOFF, District Judge.

The question presented in this case is when the statute of limitations begins to run in an action against a physician, a nurse, or a hospital for negligence in leaving a foreign substance, such as a sponge, a piece of gauze, or a needle, in a patient's body after a surgical operation; specifically, whether the period of limitations starts when the object is left in the wound, or when its presence in the patient's body is first discovered at some later date. The question is of novel impression in this District and for that reason this Court has made an examination of the authorities in other jurisdictions, as well as a study of the pertinent principles.

The query arises on plaintiffs' motion for a rehearing of the defendants' motion for summary judgment, which was made solely on the ground that the period fixed by the statute of limitations had expired against the claim prior to the institution of the suit. The complaint alleges that on June 1, 1962, the plaintiff Mary Burke was admitted to the defendant Washington Hospital Center, and that two days later an operation was performed on her at the hospital by the defendant Dr. Ernest W. Lowe. It is further asserted that one of the sponges used by the surgeon during the operation was left in her body when the incision was closed. The presence of the sponge in the plaintiff's body was not discovered until July 1967, when it was removed by another operation. The patient and her husband bring this suit for damages, including the pain and suffering that she suffered during the intervening years.

The defendants contend that the action is barred by the local three-year statute of limitations prescribed for actions for negligence, D.C. Code § 12–301 (8), and have moved for summary judgment on that ground. The plaintiffs argue that the statute of limitations did not begin to run until the discovery in July 1967 of the fact that the foreign substance had been left in the wound five years previously, and that, accordingly, this action, which was brought on November 20, 1967, is timely. These opposing contentions present the problem to be solved by this Court.

The general rule was originally that the period of limitations in such actions commences when the foreign substance is left in the wound, on the basic theory that the time starts when the cause of action arises. One of the leading cases upholding and applying this doctrine is a Massachusetts decision in Cappuci v. Barone (1929) 266 Mass. 578, 165 N.E. 653. There, a surgical operation was performed on the plaintiff in May 1924. The fact that a piece of gauze was left

in the wound during the operation was not discovered until more than two years later. The Court held that the statutory period began when the act of negligence occurred and not when the actual injury was ascertained. Accordingly, the conclusion was reached that the action was barred by the applicable statute of limitations, which was two years. Only recently, as late as 1966, the highest court of Massachusetts reasserted this doctrine in Pasquale v. Chandler, 350 Mass. 450, 215 N.E.2d 319, on the authority of the *Cappuci* case. The Court, however, expressed some misgivings concerning the validity of this rule even though it reaffirmed and applied it (p. 322).

Ohio adhered to the same doctrine in De Long v. Campbell, 157 Ohio St. 22, 104 N.E.2d 177, 179, and reaffirmed prior cases to the same effect, refusing to adopt the principle that the statute does not begin to run until the discovery of the injury. The Court observed that "the fact that plaintiff did not know of her right of action did not prevent the statute from running * *." There was a strong dissenting opinion.

Illinois, in Mosby v. Michael Reese Hospital, 49 Ill.App.2d 336, 199 N.E.2d 633, likewise clung to what is sometimes inaccurately called the majority rule, namely, that the period of limitations begins when the object is left in the wound. The Court observed, however, (p. 635) that a trend was discernible in the direction of the "minority rule", i. e., that the period starts at the time of discovery of the injury. The Court made the following comments on this point:

"Even in the opinions of those courts which have more recently followed the majority rule, there is an occasional expression of regret. The harshness of the rule is recognized but the statutes which compel the rule are followed, albeit reluctantly."

Cases from other States may be cited, which apply the same doctrine, McClus-key v. Thranow, 31 Wis.2d 245, 142 N.W. 2d 787; Hawks v. De Hart, 206 Va. 810, 146 S.E.2d 187, 189; Murray v. Allen, 103 Vt. 373, 154 A. 678; Roybal v. White, 72 N.M. 285, 383 P.2d 250; Lindquist v. Mullen, 45 Wash.2d 675, 277 P.2d 724.

The logical reasoning underlying this theory seems ineluctable and invulnerable, i. e., a cause of action for negligence arises at the moment when the foreign substance is improperly abandoned in the patient's body and hence the statute of limitations begins to run at that time. There are occasions, however, when remorseless, inexorable logic does not necessarily lead to a just result. Logic must then yield to common sense and to substantial justice. As was said by Mr. Justice Holmes in his celebrated work on The Common Law, "the life of the law has not been logic; it has been experience." He adds that common sense should not be sacrificed to a syllogism. When such a cause of action arises, fortunately but rarely, the patient is ordinarily ignorant of what has happened and is physically unable to become aware of the situation until possibly months, or even years later, perhaps after suffering considerable pain in the interim, and then only after another physician or surgeon finally ascertains the fact, at times long after the period of limitations has expired. To say to a patient that the law accords him a cause of action for damages, but that the remedy became extinguished by lapse of time before he discovered or even could have possibly ascertained the facts, seems a futility and a denial of justice.

The Courts have gradually become uneasy and many have swung away from the original rule. In recent years, State after State started to adopt the principle that the period of limitations does not begin to run until the patient discovers, or should have discovered the fact that a foreign substance had been left in the wound. This doctrine has at times been called "the discovery rule".

It is said that the cause of action accrues when the plaintiff first learns of its existence and not when it arose theoretically.

An early glimmer in that direction came in Louisiana in Perrin v. Rodriguez, La.App., 153 So. 555. This case involved a dentist who when extracting a patient's teeth, left some roots embedded in the sockets. The Court held that the period of limitations did not commence to run until the plaintiff had become aware of the fact that he had sustained the injury and that it had resulted from the defendant's negligence.

In 1950, Pennsylvania in a detailed, well considered opinion in Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788, adopted the discovery rule. In that case a surgeon had left a sponge in the patient's body when he performed an operation. It was held that the statute of limitations did not begin to run until years later when the presence of the sponge in the patient's body was discovered.

In 1954, Florida joined the group of States that prefer the discovery rule, City of Miami v. Brooks, 70 So.2d 306, 309. The Court summarized this principle as follows:

"* * * the statute attaches when there has been notice of an invasion of the legal right of the plaintiff or he has been put on notice of his right to a cause of action."

West Virginia, in 1965, likewise accepted the discovery rule in Morgan v. Grace Hospital, Inc., 149 W.Va. 783, 144 S.E.2d 156, overruling earlier decisions. In that case a sponge had been left in the wound during a surgical operation. Its presence in the body did not come to light until ten years later. The Court concluded in a detailed opinion that the period of limitations did not start until the discovery of the foreign substance in the plaintiff's body. In the course of its discussion, the Court remarked (p. 161):

"It simply places an undue strain upon common sense, reality, logic and simple justice to say that a cause of action had 'accrued' to the plaintiff until the X-ray examination disclosed a foreign object within her abdomen and until she had reasonable basis for believing or reasonable means of ascertaining that the foreign object was within her abdomen as a consequence of the negligent performance of the hysterectomy."

Again, the Court observed (p. 162):

"We believe that the 'discovery rule' as stated and applied in cases cited above represents a distinct and marked trend in recent decisions of appellate courts throughout the nation * * *."

In New Jersey the same doctrine was adopted and prior cases to the contrary were overruled, in Fernandi v. Strully (1961) 35 N.J. 434, 173 A.2d 277.

Idaho committed itself to this principle in 1964 in Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224. In that case the plaintiff underwent a surgical operation in 1946. A sponge was left in the wound when the incision was closed. Its presence in the patient's body was not discovered until 1961. During the intervening period the patient sustained considerable suffering, during which she consulted various physicians. After reviewing numerous authorities at great length, the Court cast aside the earlier doctrine and adopted the discovery rule. It summarized its views as follows (p. 232):

"In reality, the 'general rule' has little to recommend it. It is neither the position of a majority of the jurisdictions nor is it firmly based on considerations of reason or justice. We will, therefore, adhere to the following rule: where a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence

should have learned of the presence of such foreign object in his body."

■ This case is of particular significance for our purposes. Counsel for the defendants place a strong reliance on the decision of the Court of Appeals for the Ninth Circuit in Summers v. Wallace Hospital, 276 F.2d 831, which held that the statute of limitations in such cases is not tolled while the patient is ignorant of the presence of the foreign substance in his body. The action brought in the Federal court was based on diversity of citizenship and was decided under the law of Idaho. The United States Court of Appeals in the absence of any Idaho decisions on the precise point, held that the Idaho law was that the running of the statute of limitations was not postponed while the patient was ignorant of the presence of the foreign substance in his body. The Court relied in part on the fact that the neighboring States of Oregon and Washington expressly adhered to this doctrine. The *Summers* case was decided in 1960. As has just been shown, in the *Billings* case, supra, Idaho in 1964 adopted the discovery rule. It follows hence that if the *Summers* case were decided today, the opposite result would be reached and, consequently, it does not support the argument of defendants' counsel.

It is also significant that within the past two years Oregon in Berry v. Branner, 245 Or. 307, 421 P.2d 996, overruled prior decisions and adopted the discovery rule in a case in which a surgical needle had been left in the wound during an operation but its presence was not discovered until nine years later. The *Summers* case had assumed that the Oregon rule was to the contrary on the basis of prior decisions.

At about the same time, Montana in Johnson v. St. Patrick's Hospital, 148 Mont. 125, 417 P.2d 469, 473, expressly following the guidance of the Idaho decision, committed itself to the discovery rule, stating:

"We believe that our sister state of Idaho when confronted with the problem presented by the facts of this case has adopted the best reasoned rule, which we adopt and will follow."

■ We now reach Maryland which is the most influential jurisdiction from the standpoint of the District of Columbia, because the District of Columbia was carved out of Maryland and derived its common law from that State. Maryland decisions, although not binding, are entitled to particular weight in this Court for that reason. In 1963 the highest court of Maryland in Waldman v. Rohrbaugh, 241 Md. 137, 215 A.2d 825, 830, in a detailed discussion of the topic, adopted the discovery rule. After pointing out that an increasing number of States were following it, the Court summarized its discussion in the following manner (p. 145):

"We conclude that the right of action for injury or damage from malpractice may accrue when the patient knows or should know he has suffered injury or damage. In many cases he will or should know at the time of or soon after the wrongful act that he has been the victim of negligent medical care; in other settings of fact it may be impossible for him, as a layman, unskilled in medicine, reasonably to understand or appreciate that actionable harm has been done him. If this is fairly the fact, we think he should have the statutory time from the moment of discovery, the moment he knows or should know he has a cause of action, within which to sue."

We reserved to the close of our discussion the cases that have the greatest weight and authority in this Court, namely, decisions of other Federal courts that apply a Federal rule rather than a State rule. While not absolutely binding, these authorities are exceedingly persuasive. They were decided under the Federal Tort Claims Act and hold that in actions against the United States based on negligence of a Government physician in a Government hospital, or of

other employees of the hospital, the discovery rule should govern.

In Quinton v. United States, 304 F.2d 234 (C.A.5th 1962), the plaintiff was a member of the armed forces. In 1956 his wife, while a patient in a Government hospital, was given a blood transfusion. Unfortunately the blood given her was of the wrong type. Neither she nor her husband learned this fact until June 1959, during her pregnancy, when as a result of the transfusion of incompatible blood she gave birth to a stillborn child. The Government moved to dismiss an action for damages brought by the husband in the United States District Court for the Northern District of Texas, on the ground that the claim was barred by the two-year period of limitations prescribed in the Federal Tort Claims Act. The Court of Appeals, in an opinion that reviewed the authorities in considerable detail, after holding that the question when a claim accrues under the Federal Tort Claims Act is governed by Federal and not by local State law, reached the conclusion that the period of limitations does not begin to run until the claimant discovers, or in the exercise of reasonable diligence should have discovered the act constituting the alleged negligence. On this point, the Court stated (p. 240):

"The majority rule that a cause of action for malpractice accrues on the date of the negligent act, even though the injured patient is unaware of his plight, has been subjected to heavy criticism over the years. It has almost uniformly been condemned as an unnecessarily harsh and unjust rule of law. This storm of criticism has stimulated many states to alter the rule by legislation, while other states have left it to their judiciaries to fashion a proper remedy.

"Since this majority rule, so far as we can discern, has no significant redeeming virtue, we decline to apply it under Section 2401(b). Rather, we think by far the most sensible and just rule to be applied under that section is that a claim for malpractice accrues

against the Government when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice."

The same conclusion was reached by the Ninth Circuit in Hungerford v. United States, 307 F.2d 99, which cited the *Quinton* case, supra, with approval. This was an action for damages for negligence in a Veterans' Hospital, in making an erroneous diagnosis. The Court of Appeals held that the period of limitations under the Federal Tort Claims Act begins when the error in the diagnosis was discovered, and not at the previous time when it had been negligently made.

Less than three years ago the Fifth Circuit again applied the same doctrine citing with approval its own decision in the *Quinton* case, supra, and the decision of the Ninth Circuit in the *Hungerford* case, supra, Beech v. United States, 345 F.2d 872, p. 874. The Court stated:

"A malpractice suit against the United States can be maintained within two years after the claimant discovered, or in the exercise of reasonable diligence should have discovered, the existence of the acts of malpractice upon which this claim is based."

A case in the First Circuit decided considerably earlier than the Fifth and Ninth Circuit cases, Tessier v. United States, 269 F.2d 305, which has been cited as sustaining the doctrine that the period of limitations begins when the negligent act is committed, is clearly distinguishable because it was determined under the applicable State law, in that case the law of Maine, instead of under the Federal law.

In the light of the enlightened developments in this field of the law, the Court reaches the conclusion both on principle and authority, that in the unusual and exceptional cases when a foreign object is left in a patient's wound at the close of a surgical operation, the statute of limitations begins to run when

**1334**

the patient becomes aware, or should have become aware of what had happened, and not at the moment when the surgeon closes the wound with the foreign object abandoned inside. Since the question is open in this jurisdiction, the Court adopts this principle as the rule for the District of Columbia as being in the interest of justice as well as representing the better reasoning.

This conclusion does not detract from our realization of the fact that members of the medical and nursing professions are dedicated individuals and that many physicians, surgeons and nurses continually make sacrifices in unselfishly serving humanity. So, too, modern hospitals are generally efficient, humane and considerate institutions. We are amazed at the achievements of modern medicine and stand in admiration and awe at the near-miracles performed by surgeons. We regret that doctors, nurses and hospitals are at times unduly harassed by actions for damages that are lacking in merit. The Court is not unmindful of the fact that it is possible that an indirect and undesirable result of this decision may possibly be some increase in such actions. Modern methods of microfilming records permanently may assist in defeating them. Actions for damages lacking in merit, however, occur in all fields of the law. On the other hand, no human being is infallible or impeccable; no human institution is perfect. Mistakes that everyone regrets will at times occur although probably but very rarely. To confer a cause of action for damages on the one hand and on the other to let it be oozed away by lapse of time when the patient could not possibly know of the existence of his rights, would be to take away with the left hand what has been given with the right. It would be keeping the word of promise to the ear and breaking it to the hope.

Plaintiffs' motion for a rehearing is granted, and the defendants' motion for summary judgment is denied.