KELLY, J.
(dissenting). In this wrongful death action, the majority frames the issue as whether the common-law discovery rule tolls the statutory period of limitations or whether MCL 600.5827 alone governs when plaintiffs claims accrued. It concludes that MCL 600.5827 alone controls.
I strongly disagree with this decision for three reasons. First, MCL 600.5827 does not apply to this case. Second, even if it does apply, the majority commits a tragic mistake by abandoning Michigan’s decades-old common-law discovery rule. Third, even accepting the majority’s decision to abolish the discovery rule from now on, this particular plaintiff should be allowed to claim the benefits of the rule. Accordingly, I respectfully dissent.
FACTS
This case arises from the murder of Mrs. Margarette Eby. From 1981 to 1986, she rented the gatehouse on the Mott Estate (Applewood) where she was found dead on November 9, 1986.
*431 During that five-year period, Mrs. Eby experienced occasional break-ins at the gatehouse and complained about them to Ruth Mott. Ruth Mott was Mrs. Eby’s landlord. She also lived at Applewood. Mrs. Mott’s affairs were handled by the MFO (Mott Family Office) Management Company, which acted on her behalf in virtually every aspect of her business and personal life, including Applewood. The responses that Mrs. Eby received from letters written to Mrs. Mott in 1986 regarding break-ins at the gatehouse was typified by the following:
While Mrs. Mott regrets the occurrence of last Wednesday night, it seems apparent that no system would have prevented your loss when the keys to make the system effective were left in your unlocked car in front of the house. Further, when you leave the gate open frequently and fail to provide visual security through drags, curtains or blinds, unnecessary temptation to unwelcome intruders is evident.
On November 7, 1986, Mrs. Eby attended a dinner party with three friends. Two of them accompanied her home, arriving at Applewood sometime after 11:00 p.m. Mrs. Eby’s companions observed her attempt to unlock the front door. When she was unable to do so, she asked her friends to walk her to the side door. She was able to open the side door and her companions saw her lock the door before they left.
Two days later, the gatehouse door was found open. What was discovered inside has been described by the Flint Police Department officers who arrived at the scene as perhaps the most gruesome murder scene they had ever encountered. Mrs. Eby’s body was found in her upstairs bedroom. She had been attacked, raped, and knifed to death.
*432 The physical evidence provided little of value. Besides a partial fingerprint on a bathroom faucet, the police uncovered virtually nothing to link the crime to a particular individual. As a result, it appears that the Flint Police Department pursued the only theory that seemed to suit the murder scene, that Mrs. Eby voluntarily allowed the killer into her home. However, because Mrs. Eby had not been killed by an acquaintance, this theory proved fruitless. It is unclear why the police never considered that a complete stranger might have been Mrs. Eby’s killer.
What no one knew at the time was that the MFO had given the killer, Jeffrey Gorton, access to the common area beneath Mrs. Eby’s home. Gorton was a lawn service employee of Buckler Automatic Lawn Sprinkler Company (Buckler). Two days before Mrs. Eby was raped and murdered, Gorton arrived at Applewood to perform sprinkler winterization. The MFO supervised the process and gave Gorton unsupervised access to the gatehouse basement. It is believed that, while in the house, Gorton unlocked an entry point that allowed him to reenter the building on the night of the murder.
Gorton was first identified as a suspect when, about 16 years later, Mrs. Eby’s son recognized the similarities between his mother’s murder and the murder of Northwest Airlines flight attendant Nancy Ludwig. Alerted to the similarities, the police eventually conducted deoxyribonucleic acid (DNA) testing on evidence collected from both victims. It showed that the same man killed both women. The fingerprint found on the faucet was also reexamined, and more sophisticated fingerprint techniques revealed that it belonged to Jeffrey Gorton, who was then living in Florida. A police *433 surveillance operation resulted in gathering a DNA sample from Gorton that matched the samples retrieved from both victims.
On February 8, 2002, Jeffrey Gorton was arrested and charged with murder. On January 6, 2003, he pleaded no contest to a charge of murdering Mrs. Eby more than 16 years earlier. He is currently serving a life sentence for the crime.
On August 2, 2002, Mrs. Eby’s estate filed a wrongful death complaint against Mrs. Mott’s estate (Mrs. Mott died in 1999), the MFO, MFO employees Todd Bakos and Victor Nyberg, Buckler, Jeffrey Gorton, and Gorton’s parents, Shirley and Laurence Gorton, who owned and operated Buckler. In the complaint, plaintiff alleged that (1) Jeffrey Gorton killed plaintiffs decedent, (2) Mrs. Mott, the MFO, Bakos, and Nyberg gave Jeffrey Gorton unsupervised access to the decedent’s home, (3) Mott and the MFO were responsible on a respondeat superior theory for the negligence of Bakos and Nyberg, (4) Mrs. Mott and the MFO had a duty but failed to provide adequate security for the residence despite the decedent’s repeated requests for it and notice of prior criminal activity at the site, (5) Buckler and Shirley and Laurence Gorton breached their duty to conduct adequate employment investigations to determine if prospective employees presented any danger, (6) Shirley and Laurence Gorton failed to supervise Jeffrey when they knew or should have known he was a threat, (7) and Shirley and Laurence Gorton had respondeat superior liability because they put Jeffrey in a position to rape and kill the decedent.
Each defendant, except Jeffrey Gorton, filed a motion for summary disposition, arguing that the claims were barred by the statute of limitations. Genesee Circuit Judge Robert M. Ranson ruled on the motions on *434 October 28, 2003. With the exception of the claim against the MFO and Mrs. Mott’s estate that were premised on a generalized duty to keep Mrs. Eby safe, the motions were denied. The trial court ruled that, because plaintiff did not know who killed Mrs. Eby before 2002, plaintiff did not know that someone had breached a duty. Hence, plaintiff lacked knowledge of the causation component of the claims until 2002.
The Court of Appeals granted defendants’ applications for leave to appeal. In a unanimous, published opinion, the Court affirmed the part of the trial court’s decision that denied defendants’ motions for summary disposition. But it reversed the part that granted summary disposition to the MFO and Mrs. Mott’s estate on the claim alleging failure to provide adequate security. Trentadue v Buckler Automatic Lawn Sprinkler Co, 266 Mich App 297, 299; 701 NW2d 756 (2005). The panel found that the common-law discovery rule tolled the statute of limitations with respect to all the claims. It ruled that plaintiff could not have been aware of a possible cause of action against defendants until Jeffrey Gorton was identified as the killer. Id. at 303-305.
This Court granted defendants’ applications for leave to appeal, directing the parties “to include among the issues to be briefed whether the Court of Appeals application of a common-law discovery rule to determine when plaintiffs claims accrued is inconsistent with or contravenes MCL 600.5827, and whether previous decisions of this Court, which have recognized and applied such a rule when MCL 600.5827 would otherwise control, should be overruled.” 475 Mich 906 (2006).
STANDARD OF REVIEW
In the absence of disputed facts, whether a cause of action is barred by a statute of limitations is a question *435 of law that we review de novo. Boyle v Gen Motors Corp, 468 Mich 226, 229-230; 661 NW2d 557 (2003). We also review de novo a trial court’s decision on a motion for summary disposition. Ostroth v Warren Regency, GP, LLC, 474 Mich 36, 40; 709 NW2d 589 (2006).
MCL 600.5827 DOES NOT APPLY TO PLAINTIFF’S CLAIMS
This Court asked the parties to answer whether the common-law discovery rule conflicts with MCL 600.5827 and, if so, whether decisions of this Court recognizing the rule should be overruled. MCL 600.5827 is Michigan’s accrual statute. It states:
Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.
In deciding that the common-law discovery rule conflicts with § 5827, a majority of this Court errs by deciding that § 5827 applies to plaintiffs claims. Because I find that § 5827 is not implicated by this case, I conclude that this Court overreaches and unnecessarily decides that the common-law discovery rule is inapplicable when § 5827 applies.
All tort causes of action are governed by a statute of limitations. MCL 600.5805 is the statute that governs personal injury actions. The specific subsection that applies to plaintiffs claims is MCL 600.5805(10). It provides:
The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.
Subsection 10 differs from the other subsections of § 5805. The other subsections provide a specific period *436 during which a case must be filed. But they do not provide an accrual period.[1] When these subsections apply, § 5827 determines when the limitations period begins to run. Unlike these subsections, subsection 10 provides not only a specific period for filing (within 3 years), it provides when the action accrues (the time of death or injury).
Given that § 5805(10) contains its own accrual provision, whenever § 5805(10) is applicable, one need not consider § 5827. Indeed, § 5827 states that its accrual provision is to be applied “[e]xcept as otherwise expressly provided.” When § 5805(10) controls, the accrual of the limitations period is “otherwise expressly provided.” Hence, because § 5827 does not apply, it is unnecessary for this Court to address whether the discovery rule is applicable when § 5827 applies, and this Court overreaches by answering that question.[2]
*437 THIS COURT SHOULD NOT OVERRULE ITS OWN PRIOR DECISIONS RECOGNIZING THE COMMON-LAW DISCOVERY RULE
As demonstrated earlier in this opinion, MCL 600.5827 does not apply to plaintiffs claims. But, if it did, the issue would be whether the common-law discovery rule saves plaintiffs claims from the running of the statutory period of limitations or whether § 5827 alone determines when plaintiffs claims accrued. The majority has decided that plaintiff’s claims cannot be saved by the common-law discovery rule and has overruled the prior decisions of this Court that recognized the rule. In so doing, it has wiped out caselaw with a foundation stretching back well over 100 years.[3] Yet each of the factors articulated in Robinson v Detroit[4] for deciding when it is appropriate to overrule the precedent of this Court counsel in favor of retaining those decisions.[5]
*438 THE ROBINSON FACTORS
The Robinson factors are used to determine when it is appropriate to overrule the precedent of this Court. The first is whether the earlier decision was wrongly *439 decided. Robinson, 462 Mich at 464. Finding that an earlier decision was wrongly decided is not the end of the inquiry, however. Id. at 465. The Court must also weigh the effects of overruling the decision. Id. at 466. This consideration involves a review of whether the decision “defies ‘practical workability,’ whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision.” Id. at 464.
The first question, therefore, is whether this Court’s prior decisions recognizing the common-law discovery rule were wrongly decided. The majority claims that the language of MCL 600.5827 indicates that the Legislature did not intend to allow plaintiffs to claim the benefit of the common-law discovery rule when § 5827 applies. I disagree. The majority erroneously ignores deliberate actions of the Legislature that have recognized and ratified prior decisions of this Court applying the common-law discovery rule. These actions signify the Legislature’s approval of the rule.
The common-law discovery rule has been a part of Michigan limitations law for many years and has been applied in a variety of contexts.[6] And after this Court recognized the discovery rule, the Michigan Legislature twice passed statutes that expressly limit the operation of the rule.
MCL 600.5838 and MCL 600.5838a describe how the limitations period operates in professional negligence cases. The Legislature added language to both of these *440 statutes specifying that the period of limitations applies “regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.” This demonstrates that the Legislature recognizes the discovery rule and is aware of what it needs to do to prevent the rule from applying in particular cases. Therefore, MCL 600.5838 and MCL 600.5838a are important because they demonstrate that the Legislature has limited the discovery rule where it saw fit.
More importantly § 5838 and § 5838a represent legislative acceptance of the discovery rule. By specifically limiting the discovery rule in professional negligence cases, the Legislature has implicitly acknowledged the applicability of the rule in other types of cases. As a result, in professional negligence cases, a plaintiff may no longer claim the benefit of the common-law discovery rule. But the Legislature has not prohibited application of the rule outside the areas addressed in § 5838 and § 5838a.[7]
*441 Given that the actions of the Legislature strongly suggest its approval of most of this Court’s prior decisions recognizing the common-law discovery rule, the rule should not be discarded. However, even if one believes that earlier cases applying the rule were wrongly decided, it does not follow that these cases must be overruled. Robinson, 462 Mich at 465. Rather, stare decisis is generally “the preferred course because it promotes the evenhanded, predictable, and consistent development of. legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.” Id. at 463 (citation omitted).
Before jettisoning precedent, this Court must determine “whether overruling such decision would work an undue hardship because of reliance interests or expectations that have arisen.” Robertson v DaimlerChrysler Corp, 465 Mich 732, 757; 641 NW2d 567 (2002), In assessing these reliance interests, “the Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone’s expectations that to change it would produce not just readjustments, *442 but practical real-world dislocations.” Robinson, 462 Mich at 466. The common-law discovery rule has become so embedded in the fabric of Michigan limitations law that the state’s jurisprudence will be seriously damaged by destroying it.
This Court has recognized a fundamental right of access to courts for a great many years. As it stated in 1877, “[ejvery man is entitled to his day in court before his rights can be finally disposed of, and even the Legislature could not deprive him of the right.” Ehlers v Stoeckle, 37 Mich 260, 262-263 (1877). The genesis of Michigan’s common-law discovery rule goes back even further and can be traced to Justice COOLEY over 140 years ago:
The general power of the legislature to pass statutes of limitation is not doubted. The time that these statutes shall allow for bringing suits is to be fixed by the legislative judgment, and where the legislature has fairly exercised its discretion, no court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised. But the legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy; all remedy whatsoever may be taken away.... It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought. [Price v Hopkin, 13 Mich 318, 324 (1865).]
The discovery rule, based on principles of fundamental fairness, “ ‘was formulated to avoid the harsh results produced by commencing the running of the statute of limitations before a claimant was aware of any basis for an action.’ ” Stephens v Dixon, 449 Mich 531, 535; 536 NW2d 755 (1995) (citation omitted).
Elimination of the common-law discovery rule will have a drastic, adverse effect on plaintiffs’ rights in Michigan. Cutting off plaintiffs’ actions before plaintiffs *443 even know they have a cause of action is the very definition of a “practical real-world dislocation.” And people will lose confidence in the courts when they learn that the courts deny them compensation for their injuries simply because it took too long to discover their causes of action.
Aside from the real-world dislocation created by abolishing the common-law discovery rule, there are other factors to consider in determining whether to overrule the prior decisions of this Court. They include whether the decisions defy practical workability and whether changes in the law or the facts no longer justify the questioned precedents. Robinson, 462 Mich at 464. It has not been shown that the discovery rule is unworkable. To the contrary, the near universal acceptance of this rule around the country is a strong indication of its workability.[8] And no facts or law have *444 changed to call into question those cases recognizing the discovery rule. Indeed, the Legislature’s decision to abolish the rule solely in the context of professional negligence cases indicates its approval of this Court’s decisions that have applied the rule in other contexts.
It is the majority’s decision to abolish the common-law discovery rule that threatens to defy practical workability by leading to absurd results and constitutional violations. This Court has held that “[sjtatutes should be construed so as to prevent absurd results, injustice or prejudice to the public interest.” McAuley v Gen Motors Corp, 457 Mich 513, 518; 578 NW2d 282 (1998). See also Cameron v Auto Club Ins Ass’n, 476 Mich 55; 718 NW2d 784 (2006). Without the discovery rule, plaintiffs will lose the right to pursue certain causes of action before they have or could have had knowledge of them. The plaintiff in this case falls within that group.
Moreover, given this Court’s decision in Henry v Dow Chemical Co,[9] the very real possibility exists that there *445 will be cases in which a plaintiff will never be able to file suit. In Henry, this Court held that a plaintiff can pursue a tort claim only if he or she has suffered a present injury. Henry, 473 Mich at 74. Because there will be cases in which a person’s injury will not be manifested for a prolonged time, there will be cases in which no cause of action can ever be pursued. These are cases in which a person’s injury does not manifest itself until the established limitations period has expired. The absurdity of a system that deprives someone of his or her cause of action before it can be instituted is manifest. As Judge Jerome Frank stated:
Except in topsy-turvy land you can’t die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or hurn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal “axiom,” that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i.e., before a judicial remedy is available to the plaintiff. For a limitations statute, by its inherent nature, bars a cause of action solely because suit was not brought to assert it during a period when the suit, if begun in that period, could have been successfully maintained; the plaintiff, in such a case, loses for the sole reason that he delayed — beyond the time fixed by the statute — commencing his suit which, but for the delay, he would have won. [Dincher v Marlin Firearms Co, 198 F2d 821, 823 (CA 2, 1952) (Frank, J., dissenting).]
Today’s decision to abolish the discovery rule also raises constitutional questions regarding the extent of the Legislature’s authority to enact statutes of limitations. The Legislature can, if it chooses, completely eliminate common-law causes of action.[10] But the enactment of a statute of limitations implicates other considerations. The purpose of a limitations statute is *446 to “penalize plaintiffs who have not been industrious in pursing their claims,”[11] not to eliminate a valid cause of action when the plaintiff is without fault. Lemmerman v Fealk, 449 Mich 56, 65-66; 534 NW2d 695 (1995). For this reason, this Court has repeatedly held that a limitations period that does not provide a reasonable period in which to file suit is constitutionally suspect. See, e.g., Krone v Krone, 37 Mich 308 (1877); Dyke v Richard, 390 Mich 739; 213 NW2d 185 (1973).
In Dyke, this Court prohibited a statute of limitations from extinguishing a right to bring suit before reasonable discovery of the cause of action was possible. The Court explained:
Since “[i]t is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought...”, Price, supra, a statute which extinguishes the right to bring suit cannot be enforced as a law of limitation. As to a person who does not know, or in the exercise of reasonable diligence could not ascertain within the two year period that he has a cause of action, this statute has the effect of abolishing his right to bring suit.
Such a statute, if sustainable at all could be enforced only as one intended to abolish a common law cause of action. But this statute does not purport to do this, is not asserted to do so, and we cannot ascribe any legislative intention to accomplish that end. We read it as a statute of limitation which applies in every case except where the plaintiff does not know of his cause of action. [Dyke, 390 Mich at 746-747.]
And this Court has also held that a limitations provision that does not afford a reasonable time to file suit cannot be constitutionally upheld, because it prevents access to the courts. Forest v Parmalee[12] held that “statutes of limitations are to be upheld by courts *447 unless it can be demonstrated that they are so harsh and unreasonable in their consequences that they effectively divest plaintiffs of the access to the courts intended by the grant of the substantive right.”
In certain circumstances, the common-law discovery rule is necessary to ensure that plaintiffs have had a reasonable time to gain knowledge of their causes of action. By abrogating this rule, the majority decision raises serious constitutional questions. These constitutional concerns counsel in favor of retaining the discovery rule.
This Court, like most, has long recognized the value of stare decisis. Its decisions applying the common-law discovery rule should be upheld under that doctrine because (1) the decisions recognizing the rule were correctly decided, (2) a change in the discovery rule would have a drastic effect on plaintiffs’ rights, (3) the discovery rule is workable, and (4) abolishing the rule will lead to constitutional violations as well as absurd and unjust results.
MCL 600.5869 REQUIRES APPLICATION OP THE COMMON-LAW DISCOVERY RULE TO PLAINTIFF’S CLAIMS
A majority of this Court decides that the common-law discovery rule is inapplicable when MCL 600.5827 applies. I strongly disagree with this decision. But, even accepting it, the Court need not reverse the Court of Appeals decision in this case.
MCL 600.5869 provides:
All actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry.
The majority finds that “plaintiffs claims accrued at the time of Eby’s death.” Ante at 407. Mrs. Eby was *448 murdered in 1986. At that time, this Court recognized the common-law discovery rule. Thus, as of 1986, the law in this state was that the cause of action did not accrue until “all of the elements of the cause of action have occurred and can be alleged in a proper complaint.” Connelly v Paul Ruddy’s Equip Repair & Service Co, 388 Mich 146, 150; 200 NW2d 70 (1970). It follows that, although some future plaintiffs may not be able to claim the benefit of the common-law discovery rule, this plaintiff can. For this reason, the majority need not reverse the decision of the Court of Appeals.[13]
APPLICATION OF THE COMMON-LAW DISCOVERY RULE TO THE FACTS OF THE CASE
Under the common-law discovery rule, a claim accrues when, on the basis of objective facts, a plaintiff *449 can allege each element of the asserted claim. Moll v Abbott Laboratories, 444 Mich 1, 15-16; 506 NW2d 816 (1993). A claim for personal injury must allege that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, (3) the defendant’s breach was the proximate cause of the plaintiffs injuries, and (4) the plaintiff suffered damages. Chase v Sabin, 445 Mich 190, 201 n 15; 516 NW2d 60 (1994).
Here, it was not until after Jeffrey Gorton was arrested that plaintiff found out that Mrs. Eby’s killer was a stranger. Plaintiff could not have alleged a breach of duty against any of the defendants before knowing that a stranger, Gorton, had killed Mrs. Eby. Therefore, it was not until Gorton was identified as the killer that the period of limitations began to run. Because plaintiff filed suit within three years of the identification of Gorton as the killer, plaintiffs claims are timely.[14]
CONCLUSION
With today’s decision, the majority throws Michigan into topsy-turvy land, where a person’s legal claim dies before it is born. The majority finds that plaintiffs tort cause of action disappeared before plaintiff could discover the tortfeasor. As a result, the judgment of the Court of Appeals has been reversed.
I disagree with this decision on numerous grounds. MCL 600.5827 does not apply here. Moreover, it is a grievous error to overrule the precedent of this Court that recognizes the common-law discovery rule. The Legislature has signaled its approval of this precedent and indicated that the rule should apply in all cases except those alleging professional negligence. The judg *450 ment of the Court of Appeals should be affirmed and the discovery rule should remain untouched. But, even if the discovery rule has no application in the future, this particular plaintiff should be allowed to claim the benefits of the rule. For these reasons, I dissent.

 Examples of these other subsections illustrate this point: § 5805(2) specifies only that “[t]he period of limitations is 2 years for an action charging assault, battery, or false imprisonment.” Similarly, § 5805(5) provides that “the period of limitations is 2 years for an action charging malicious prosecution.”

 The majority recognizes that MCL 600.5805(10) provides both the specific statutory period of limitations and the date when that period begins to run. It follows that the majority also implicitly recognizes that MCL 600.5827 has no application to this case. Yet it proceeds to decide the case as if MCL 600.5827 applies. Of course, this makes it possible to use this case to decide whether the common-law discovery rule conflicts with MCL 600.5827. Reaching out to decide an issue that need not be decided is generally considered a form of judicial activism.
Apparently, the majority deems it appropriate to decide whether the discovery rule can save a claim when MCL 600.5827 otherwise applies because the result would be the same under MCL 600.5827 and MCL 600.5805(10). Regardless of whether this is true, it is well established that a court should only decide issues that are necessary to resolve the case at hand. Because MCL 600.5827 does not apply, the case should not be decided as if it did, regardless of whether the same result would apply under either MCL 600.5827 or MCL 600.5805(10). The more prudent *437 course would be to decide this case under MCL 600.5805(10). The Court should wait for a case implicating MCL 600.5827 to decide whether the discovery rule can save a plaintiffs claims from the running of the period of limitations when § 5827 would otherwise apply.

 See the discussion of this Court’s recognition of the fundamental right of access to the courts on pages 442-443 of this dissent.

 462 Mich 439; 613 NW2d 307 (2002).

 The four justices who are in the majority in this case were also in the majority in Robinson. Looking back, one must question the majority’s statement in Robinson that stare decisis is generally “ ‘the preferred course.’ ” Id. at 463 (citation omitted). This majority has never relied on the doctrine to uphold a prior decision of this Court.
The majority attempts to turn the argument around and questions “whether [my] ongoing criticism truly concerns [their] attitudes toward precedent or merely [my] attitude toward specific previous decisions of the Court.” Ante at 394 n 16. In support of this allegation, the majority cites my opinion in People v Smith, 478 Mich 292; 733 NW2d 351 (2007), and my opinion in Haynes v Neshewat, 477 Mich 29; 729 NW2d 488 (2007). My opinions in these cases are easily distinguishable from a decision like the majority’s that eradicates a rule with a foundation stretching back well over 100 years. In Smith, the majority overruled People v Robideau, 419 Mich 458; 355 NW2d 592 (1984). I preferred to *438 retain Robideau. My position in Smith does not support a claim that I do not respect precedent. And in Haynes, I wrote the unanimous majority opinion. The opinion carefully considered the Robinson factors and concluded that no factor counseled against overruling our decision in Kassab v Michigan Basic Prop Ins Ass’n, 441 Mich 433; 491 NW2d 545 (1992). Kassab interpreted the Civil Rights Act to allow discriminatory behavior. We decided that it would be inappropriate to retain an erroneous interpretation of an act meant to protect against discrimination solely because some individuals may rely on the decision to discriminate. Every member of the Court agreed.
Rather than look to Smith and Haynes, the majority would do better to look to my recent opinions in Liss v Lewiston-Richards, Inc, 478 Mich 203; 732 NW2d 514 (2007), Rohde v Ann Arbor Pub Schools, 479 Mich 336; 737 NW2d 158 (2007), and Michigan Citizens for Water Conservation v Nestlé Waters North America Inc, 479 Mich 280; 737 NW2d 447 (2007).
In Liss I stated, “[Gjiven the language and purpose of the [Michigan Consumer Protection Act, MCL 445.901 et seq.], I believe that this Court interpreted the exemption correctly in [Attorney General v] Diamond Mortgage [414 Mich 603; 327 NW2d 805 (1982)] and incorrectly in Smith [u Globe Life Ins Co, 460 Mich 446; 597 NW2d 28 (1999)]. Even so, because I do not think the compelling interests necessary to overrule a prior decision of this Court are present, I do not advocate overruling Smith.” Liss, 478 Mich at 226 (Kelly, J., dissenting). In Rohde, I stated, “I recognize with regret that this Court’s decisions in Lee [v Macomb Co Bd of Comm’rs, 464 Mich 726; 629 NW2d 900 (2001)] and [Natl Wildlife Federation v] Cleveland Cliffs [Iron Co, 471 Mich 608; 684 NW2d 800 (2004)] now constitute binding precedent.” Rohde, 479 Mich at 362 n 5 (Kelly, J., dissenting). And in Nestlé, I wrote ‘Justice WEAVER reaches the opposite conclusion. In so doing, she rejects the standing test adopted by the majority____While I agree with Justice Weaver’s conclusion and her analysis of these decisions, I also recognize that Lee and Cleveland Cliffs now constitute binding precedent of this Court.” Nestlé, 479 Mich at 324-326 (Kelly, J. dissenting). Hence, even though I did not agree with the precedent in these cases, I said nothing about overruling it. The majority cannot point to a single case where, having expressed its disagreement with precedent, it has not overruled it or signaled its intent to overrule it.

 See, e.g., Johnson v Caldwell, 371 Mich 368; 123 NW2d 785 (1963) (rule applied in medical malpractice cases); Williams v Polgar, 391 Mich 6; 215 NW2d 149 (1974) (rule applied in negligent misrepresentation cases); Larson v Johns-Manville Sales Corp, 427 Mich 301; 399 NW2d 1 (1986) (rule applied in products liability cases); Moll v Abbott Laboratories, 444 Mich 1; 506 NW2d 816 (1993) (rule applied in pharmaceutical products liability cases).

 The majority claims that there is no “reason to equate the Legislature’s ‘approval of the rule’ — by its codification of some of this Court’s uses of the rule — with the Legislature’s approval of every application of the rule.” Ante at 395. Yet the well-established maxim of expressio unius est exclusio alterius, which this majority has often invoked in deciding cases, states that the Legislature’s mention of one thing implies the exclusion of all others. E.g., Miller v Chapman Contracting, 477 Mich 102; 730 NW2d 462 (2007); Pittsfield Charter Twp v Washtenaw Co, 468 Mich 702, 712; 664 NW2d 193 (2003). By expressly providing that the discovery rule does not apply in professional negligence cases, the Legislature implied that it was to apply in all other contexts.
The majority implies that MCL 600.5838 and MCL 600.5838a support its position. In both of these statutes, the Legislature specifically limited the operation of the common-law discovery rule by providing that the period of limitations described in these sections applies “regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.” The only possible reason the Legislature would have included this language is to take professional negligence claims outside the scope of the common- *441 law discovery rule. But, as a result of the majority’s decision, this language is reduced to a redundancy. When a “plaintiff discovers or otherwise has knowledge of the claim” is completely irrelevant if there is no common-law discovery rule. The majority has decided that the Legislature wrote this language in order to remove professional negligence claims from the scope of a rule that the Legislature never recognized as existing.
The majoriiy claims that MCL 600.5838(2) undercuts my position because that section provides a statutory discovery period. The Legislature’s decision to provide a statutory discovery period does nothing to weaken my position. Through MCL 600.5838(1), the Legislature took professional negligence claims outside the scope of the common-law discovery rule. It was entirely consistent for the Legislature to provide a statutory discovery period. In so doing, it took some of the sting out of removing professional negligence claims from the scope of the common-law rule.

 In addition to Michigan, 35 states plus the District of Columbia have embraced the discovery rule. See, e.g., Alaska: Hanebuth v Bell Helicopter Int'l, 694 P2d 143 (Alas, 1984). Arkansas: State v Diamond Lakes Oil Co, 347 Ark 618; 66 SW3d 613 (2002). California: Norgart v Upjohn Co, 21 Cal 4th 383; 981 P2d 79; 87 Cal Rptr 2d 453 (1999). Colorado: Rauschenberger v Radetsky, 745 P2d 640 (Colo, 1987). Connecticut: Champagne v Raybestos-Manhattan, Inc, 212 Conn 509; 562 A2d 1100 (1989). Delaware: In re Asbestos Litigation West Trial Group, 622 A2d 1090 (Del Super Ct, 1992). Florida: Johnson v Szymanski, 368 So 2d 370 (Fla, 1979). Georgia: King v Seitzingers, Inc, 160 Ga App 318; 287 SE2d 252 (1981). Hawaii: Yoshizaki v Hilo Hosp, 50 Hawaii 150; 433 P2d 220 (1967). Indiana: Wehling v Citizens Nat’l Bank, 586 NE2d 840 (Ind, 1992). Iowa: Roycroft v Hammons, 203 F Supp 2d 1053 (SD Iowa, 2002). Louisiana: Harvey v Dixie Graphics, Inc, 593 So 2d 351 (La, 1992). Maine: Johnston v Dow & Coulombe, Inc, 686 A2d 1064 (Me, 1996). Maryland: Georgia-Pacific Corp v Benjamin, 394 Md 59; 904 A2d 511 (2006). Minnesota: Johnson v Winthrop Laboratories Div of Sterling Drug, Inc, 291 Minn 145; 190 NW2d 77 (1971). Mississippi: Sweeney v Preston, 642 So 2d 332 (Miss, 1994). Nebraska: Condon v AH Robins Co, 217 Neb 60; 349 NW2d 622 (1984). Nevada: Siragusa v Brown, 114 Nev 1384; 971 P2d 801 (1998). New Hampshire: Big League Entertainment, Inc v Brox Industries, 149 NH 480; 821 A2d 1054 (2003). New Jersey: Mancuso v Mancuso, 209 NJ Super 51; 506 A2d 1253 (1986). New Mexico: McNeil v *444 Rice Engineering & Operating Inc, 139 NM 48; 128 P3d 476 (NM App, 2005). North Dakota: Wells v First American Bank West, 598 NW2d 834 (ND, 1999). Ohio: Collins v Sotka, 81 Ohio St 3d 506, 692 NE2d 581 (1998). Oklahoma: Resolution Trust Corp v Grant, 901 P2d 807 (Okla, 1995). Rhode Island: Wilkinson v Harrington, 104 RI 224; 243 A2d 745 (1968). South Carolina: Gattis v Chavez, 413 F Supp 33 (D SC, 1976). Tennessee: Hathaway v Middle Tennessee Anesthesiology, PC, 724 SW2d 355 (Tenn App, 1986). Texas: McDade v Texas Commerce Bank, Nat’l Ass’n, 822 SW2d 713 (Tex App, 1991). Utah: Klinger v Kightly, 791 P2d 868 (Utah, 1990). Vermont: Leo v Hillman, 164 Vt 94; 665 A2d 572 (1995). Virginia: Locke v Johns-Manville Corp, 221 Va 951; 275 SE 2d 900 (1981). Washington: White v Johns-Manville Corp, 103 Wash 2d 344; 693 P2d 687 (1985). West Virginia: Gaither v City Hosp, 199 W Va 706; 487 SE2d 901 (1997). Wisconsin: Hansen v A H Robins Co, Inc, 113 Wis 2d 550; 335 NW2d 578 (1983). Wyoming: Olson v A H Robins Co, Inc, 696 P2d 1294 (Wyo, 1985). District of Columbia: Burke v Washington Hosp Ctr, 293 F Supp 1328 (D DC, 1968).

 473 Mich 63; 701 NW2d 684 (2005).

 Bean v McFarland, 280 Mich 19, 21; 273 NW 332 (1937).

 Lothian v Detroit, 414 Mich 160, 166-167; 324 NW2d 9 (1982).

 402 Mich 348, 359; 262 NW2d 653 (1978).

 The majority claims that § 5869 cannot save plaintiffs claim because the statutory law has not changed since 1986. This fact is irrelevant. Section 5869 states that “[a]ll actions and rights shall be governed and determined according to the law under which the right accrued....” This section is not confined to statutory provisions. Rather, § 5869 includes all law. It is well established that the law includes the common law. E.g., People v Blume, 443 Mich 476, 480 n 7; 505 NW2d 843 (1993); Myers v Genesee Co Auditor, 375 Mich 1, 7; 133 NW2d 190 (1965); Const 1963, art 3, § 7. Because it is clear that this Court recognized a common-law discovery rule in 1986, § 5869 requires that the discovery rule be applied to plaintiffs case. And because § 5869 requires application of the discovery rule, the majority’s discussion about retroactive versus prospective application of decisions by this Court is misplaced.
The majority also claims that I present no authority or explanation for why the discovery rule is applicable. Ante at 400. In fact, I have made such a presentation. I will recap it here: MCL 600.5869 states that all actions shall be governed by the law as it existed when the claim accrued. The majority asserts that the claim in this case accrued in 1986. In 1986, this Court recognized the common-law discovery rule. Therefore, the discovery rule was the law of the land at the time the claim accrued. Accordingly, § 5869 requires us to apply the common-law discovery rule to plaintiffs claim. As I think is obvious, the authority I cite as requiring application of the discovery rule is § 5869.

 MCL 600.5805(10) provides the applicable period of limitations for plaintiffs claim. That period is three years.